(No. 24654.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MARTIN LEVY, Plaintiff in Error.

*Opinion filed October 13, 1938—Rehearing denied Dec. 14, 1938.*

Jones and Farthing, JJ., dissenting.

Sabath, Perlman, Goodman & Rein, (Charles A. Bellows, and Theodore E. Rein, of counsel,) for plaintiff in error.

Otto Kerner, Attorney General, Thomas J. Courtney, State's Attorney, and A. B. Dennis, (Edward E. Wilson, John T. Gallagher, Melvin S. Rembe, Blair L. Varnes, Robert L. Donigan, and William B. Crawford, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

Martin Levy was convicted in the criminal court of Cook county of receiving a stolen motor vehicle, knowing it to have been stolen, for his own gain and to prevent the owner thereof from again possessing it. He was sentenced to the penitentiary for a term of one to twenty years. He has sued out this writ of error.

Fay Vick, on the morning of August 28, 1936, at about 11:00 o'clock, parked her husband's automobile, a 1934 Chevrolet coach, on Fifty-eighth street between Cottage Grove and Maryland avenues in Chicago. When she returned at about 1:00 o'clock the automobile had disappeared. She reported the loss to the police department. The following morning an investigator for the State's attorney, and other police officers, went to the defendant's place of business at 2531-39 South State street to make certain investigations. The premises consist of a two-story building on the east side of the street, separated by an enclosed driveway with a three-story building to the south. The two-story building to the north consists of three principal rooms downstairs. The front or west room is a salesroom, with a small partitioned office in the northeast corner. The second or middle room contained automobile parts and the rear room was a sort of garage. The two buildings are separated by an enclosed driveway. There is also a large garage door at the entrance of the driveway from the street. Automobiles may be driven from the street through the enclosed driveway between these buildings. There are doors on opposite sides of the driveway into each of the buildings. The first floor of the south building contained dismantled parts of automobiles.

The investigator for the State's attorney asked permission of the defendant to see his books to ascertain whether the defendant was complying with the law, and the examination was made. The evidence for the People discloses that when the police officers were in the room to the rear

of the salesroom they heard pounding in the building to the south of the driveway, and the doors being partly open, went in and saw Philip Levy, the defendant's brother, with a sledge in his hand. The officers found in that room a dismantled 1934 Chevrolet automobile. One of the officers asked Philip Levy if he had a junking certificate and he replied that there might be one in the front office. Another officer asked the defendant if he had a junking license and the defendant at first said he had it somewhere but later said: "I might as well tell you I haven't got anything on that merchandise." When asked where he obtained the Chevrolet automobile the defendant stated that he did not know, and when asked if he purchased it replied that he did not care to say. Among the numerous parts of the automobile found in the south building were the motor-block, which was still hot, and from which the numbers on the lower right side had been obliterated; there were cut-up panels of a two-door automobile, a radiator-shell and grill, rear-end transmission and wheels, front-end assemblies, dashboard and lamps, spare tire, hub caps, instrument panel, broken window-glass, remnants of upholstery and padding, some of which was smoldering on the floor, a lock and cable in an inverted fly-wheel used as a crucible, which contained melted articles, still hot. A safety-sticker, oil-change tag and drinking-glass puzzle were found in a stove in the same room with the automobile parts. Parts of the automobile were marked and photographed and subsequently taken from the defendant's place and exhibited at the trial.

Lawrence Vick, the owner of the Chevrolet automobile, (the parts of which were exhibited in court,) and Fay Vick, testified to numerous articles which had been in the automobile and markings of parts of the automobile which Lawrence Vick owned and corresponding markings on the parts taken from the defendant's place of business. Specific articles mentioned were, the safety-sticker, which had

been on the rear wind-shield, a card showing the mileage at which the oil had been changed and the drinking-glass puzzle mentioned as found in the defendant's stove. Both the Vicks testified that these articles previously had been in the automobile. Identifying marks on various automobile parts to which Vick testified, were, a dented hub cap, a sawed-off bolt, which partly attached a radio to the automobile, an emblem of the Century of Progress showing the assembly of the automobile at the exposition, spark-plugs, different from those originally on the motor, special switch hooked to the generator, a dented air-cleaner on the carbureter, a fuel strainer, not a part of the standard equipment of the automobile, a water-hose connection for a heater, special valve covers on the wire wheels which had been placed there by Lawrence Vick, special brakeshoes on one of the tires, stains of anti-freeze solution on the radiator, the same as stains on the automobile when used by Vick, an ignition lock which a key Vick possessed, unlocked, the glove compartment which another key in Vick's possession, opened. Vick also recognized the gear-shift and transmission as those of his automobile, by marks made by a cold-chisel, and paint had been scratched from the wheel rims by skid-chains in the same manner as scratches on Vick's automobile. The color of the paint was the same. There was other testimony of corresponding characteristics of marking on the automobile parts which were there before its disappearance.

The evidence for the defense consisted of the testimony of the defendant, his brother, Philip Levy, Cy Wheatley and character witnesses. The defendant testified that on the morning of August 29, 1936, a man drove up to the defendant's place of business and asked the defendant if the latter could go out to a garage on the south side in Chicago to look at some parts, which he, the prospective customer, had for sale; that the defendant said, it being Saturday and the end of the month, he could not do so;

that the prospective customer then asked if he might take the material to the defendant's place of business for his inspection, and the defendant gave his permission to do so but stated that he would not guarantee its purchase; that the caller gave no address and that was the only conversation between them; that the defendant then informed Wheatley of the conversation, and told Wheatley if the man returned, to look at the material and see if it was anything the defendant could use; that the defendant then left to go to other establishments dealing in auto parts to see if he could obtain a particular kind of radiator for a customer, and that about ten minutes after his return to his own place the police officers appeared. The defendant also testified that he did not know that the automobile parts displayed in the court room were in his warehouse when the police officers went there. He had not purchased anything from the man who called to see him the morning of August 29, and he did not own the material which the police officers took away from his place of business.

Cy Wheatley testified that the defendant had spoken to him about the material which the prospective customer might bring in; that a man called at the defendant's place and said that he had talked with the defendant previously the same morning, and that he had some parts there. The witness asked the man to wait until the defendant returned; that the man said he might wait a little while, and then asked permission to leave the material and said he would return and collect it if the defendant did not want it; that when the witness saw the material it was on the rear of a wrecking or tow truck, and the man unloaded it in about five-minutes' time, without assistance; that the witness did not check any of the material which was left, but some of it, at least, was the same as that exhibited in court; that pieces of the body of the automobile were "cut up" when it was taken to the defendant's place of business, and that the witness did not take any of the body of the automobile

apart. The witness denied that the police officers asked him where the parts were obtained, and testified that he knew nothing about the safety-sticker, the oil-change tag or the puzzle.

Philip Levy testified that on August 29, 1936, he was simonizing an automobile at his brother's place of business, and about 8:30 o'clock that morning the defendant said he was going out to see if he could obtain a radiator for a customer; that after 9:30 o'clock a man called and said that he had talked with the defendant earlier in the morning about some auto parts which the caller had for sale; that the witness then talked with Wheatley who said the defendant had spoken to him about the auto parts; that the police officers afterwards appeared and questioned him, and one of them took hold of him and used vile language toward him, and another officer hit him on the head with a revolver, and that from the treatment he received he was faint and dazed. The witness testified that he did not see the particular motor-block, radiator and other parts exhibited in court, at his brother's place of business. The witness denied that he had in his possession the motor-block or parts, and testified that he did not conceal or aid in concealing any of the automobile parts in the warehouse.

Six witnesses testified that the defendant's general reputation in the city of Chicago, prior to 1936, for honesty and integrity was good. Three witnesses for the People testified that such reputation was bad.

One of the contentions made on a motion to suppress the evidence and presented here is that there was an unlawful search and seizure without a search warrant. The Motor Vehicle act (Ill. Rev. Stat. 1937, chap. 95½, par. 85) provides that any person engaged in the business of buying, selling or dealing in used motor vehicles or parts or accessories shall require a license. Paragraph 87 of the same act provides that such licensee shall maintain a record in form as prescribed by the Secretary of State, which record

shall give a description of the motor vehicles or parts thereof purchased or received. This last section also contains a provision to the effect that every licensee, as a condition of his license, shall be deemed to have granted authority to any police officer to examine such records and motor parts at his place of business at any time.

The officer in charge was one Bartels, an investigator for the State's attorney's office, assigned to the auto-theft department. Defendant testified that, "the front part of the store was open and accessible to the public.  *  *  *  I was at the office door when I first saw some policemen and recognized Mr. Bartels as a police officer. I knew he was connected with the police department.  *  *  *  Mr. Bartels had a conversation with me at that time and place. He asked me if he could look at the books and records. I told him he could and I would take him to where the books and records were kept in the office.  *  *  *  The other officers went into the back room—the east part of the building." The defendant testified further that the police officers did not ask him if they could search his place or ask his permission to take away any part of the automobile. Three police officers testified that the defendant's permission was not only given for a search of his premises but also to remove the articles marked and taken therefrom. All the testimony on this question of search and seizure was heard by the court, and the credibility of the witnesses, together with the surrounding circumstances, was one for the court's consideration. The court ruled against the defendant on its motion to suppress the evidence. The defendant could not complain of a search to which he consented. *People* v. *Reid,* 336 Ill. 421; *People* v. *Mizzano,* 360 id. 446.

The defendant did not know how the property got upon his premises and one of the officers testified that the defendant said the automobile parts were not his property. It would be difficult to conceive of any logical reason why he could complain of the taking of property in which he

had no interest. The constitutional prohibition · against searches and seizures does not extend to all searches and seizures but only as a guard or shield against unreasonable ones. (*People* v. *Marvin*, 358 Ill. 426; *People* v. *Patterson*, 354 id. 313.) A State law providing for the licensing of those engaged in the sale of non-intoxicating liquors, with a provision for inspection at any reasonable time without a search warrant, was held effective in authorizing the officers to obtain entrance to the premises. (*Ludwig* v. *United States*, 3 Fed. (2d) 231.) The purpose of the provisions of the Motor Vehicle act mentioned was to facilitate the discovery and prevention of thefts of automobiles and parts. Independently of this act, the evidence, itself, shows consent sufficient to justify the ruling of the trial court.

It is contended that there was a total failure to prove that the defendant received the property in question, knowing it to have been stolen. There was no direct evidence of the defendant's receiving the property, knowing it to have been stolen, but the circumstances were such that a jury might well believe beyond a reasonable doubt that the defendant was guilty. A wrecked automobile, shown to have disappeared from a parking space the previous day, was found the next morning in the defendant's place of business by police officers; there was pounding when the officers were in the adjoining building; the dismantled motor was still hot; the numbers were obliterated; an acetylene torch was near the automobile parts; the work of dismantling and obliterating numbers was not permitted without a license therefor, and the defendant and his assistants' answers to questions as to a license were not straightforward, but were evasive. The defendant did not keep proper records. If the defendant had no interest in the automobile, it is hardly likely that the three articles, which may have been of some value or interest to the owner, would have been thrown in the stove. Certain articles were in a crucible as if to be burned. Some parts of the automobile were burning when

the officers went to the defendant's premises. These were all pertinent questions bearing upon the issue which the jury had a right to take into consideration and which might properly influence its verdict. The weight of the evidence was for the jury and unless palpably contrary to the verdict the verdict will not be disturbed by this court. *People* v. *Kelley,* 367 Ill. 318.

The defendant's counsel contends that the court erred in permitting the People to introduce testimony of the defendant's bad reputation, based only on the personal opinions of the impeaching witnesses. The evidence on this subject was offered by three police officers. When one of them testified that his opinion as to the general reputation of the defendant for truth and veracity was based upon the fact of the defendant's previous arrest on a charge in 1933, a motion to strike was allowed as to such testimony, but the witness had also testified that his opinion as to the reputation of the defendant for honesty and integrity was not only based on his own experience but from conversations with others, and that testimony was permitted to stand. No motion was made to strike that testimony. Although two of the witnesses testified to their individual opinions based upon their experiences, yet they had talked to others and it was also upon such conversations their opinions were formed. The motions to strike were general. The defendant's counsel did not then urge that, even if the opinions of the respective witnesses were based only upon conversations with police officers and did not relate to the defendant's general reputation, the testimony was objectionable. If a part of the testimony was competent a general motion to strike all the testimony was properly overruled. (*People* v. *Walczniak,* 273 Ill. 76.) While it is argued in the defendant's brief that the reputation among the several police officers was not competent proof of the defendant's general reputation, that was not the specific basis of the motion to strike in the trial court. The admission of testimony to

which no objection is made is not subject to review and the argument made now cannot be considered. *People* v. *Mitchell,* 368 Ill. 399; *People* v. *Cozzi,* 364 id. 20; *People* v. *Covitz,* 262 id. 514, 551.

It is contended that the court erred in giving an instruction defining an accessory. As stated, the testimony was circumstantial. There was testimony from which it might be inferred that one of the employees actually received the automobile in question and that the defendant, as the owner of the place, was familiar with what transpired and approved it, and if he did so he would be liable to indictment and prosecution as a principal. The definition of an accessory was correctly stated and there was no error in giving the instruction. Ill. Rev. Stat. 1937, chap. 38, par. 582, p. 1174.

There is no reversible error in the record and the judgment of the criminal court is affirmed.

*Judgment affirmed.*

JONES and FARTHING, JJ., dissenting.