(No. 36451.—
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DOROTHY JACKSON, Plaintiff in Error.

*Opinion filed November 30, 1961.*

Walter La Von Pride, of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and John T. Gallagher and William L. Carlin, Assistant State's Attorneys, of counsel,) for the People.

\* Mr. Chief Justice Bristow delivered the opinion of the court:

Dorothy Jackson was indicted for the crime of unlawful possession of narcotic drugs. A bench trial resulted in a judgment of conviction, and she prosecutes this writ of error.

On August 23, 1960, certain State narcotic inspectors obtained a search warrant for the third-floor apartment at 4367 South Oakenwald Avenue, Chicago. The warrant named Jane Doe, *alias* Doris Greenwood, as respondent.

One of the agents, Stribling, was met at the door of the apartment by the defendant, who was carrying a large handbag. He inquired if she was Doris, and she replied that she was not. He displayed his badge and informed her that she was under arrest, whereupon she invited him in. She took two steps into the apartment, then turned quickly and ran down the hallway to the bathroom, where she locked herself in.

Agent Stribling banged vigorously on the door of the bathroom, and after a short interval, the defendant opened

_____

\* This opinion was prepared by the late Mr. Chief Justice Bristow, and was adopted and filed as the opinion of the court.

the door, her appearance suggesting that she had been using the toilet facilities.

Agent Stribling suggested to the defendant that she had flushed narcotics down the toilet. The defendant denied this, and invited Stribling to look for himself. Stribling thereupon attempted to handcuff the defendant. He placed handcuffs on one of her wrists, but the defendant violently resisted the completion of this procedure. Four other agents came to assist Stribling, who subsequently testified that he "clocked" the time necessary to handcuff the defendant's other wrist at fifteen minutes. In the scuffle, two of the agents received minor injuries.

The agents inspected the toilet bowl and found no moisture above the water level. The face bowl was dry. The interior of the bathtub bore marks which might have been footprints. The purse which the defendant had been carrying earlier, was observed lying open on the floor of the bathroom.

The agents looked out the bathroom window, and observed that it opened on an airwell. Seven other apartments in the building also have windows opening on the airwell.

The bottom of the airwell, at the basement level, was covered with filth and debris. One of the agents descended to the basement level and entered the airwell. Stribling held his hand out the defendant's bathroom window, and directly beneath his hand a package was found at the surface of the debris. The remainder of the refuse bore evidence of having been subjected to rainfall; the package was dry. However, it had not rained for at least two days.

The package contained a number of envelopes of white powder subsequently analyzed as heroin. The agents confronted the defendant with the package, and suggested that she had thrown it into the airwell. The defendant denied this. The agents told the defendant that her fingerprints would probably be found on the package. Defendant appeared disturbed, but she persisted in her denial.

The foregoing is a summary of the testimony of the agents who participated in the arrest. Those events formed the basis for the defendant's indictment.

Testifying on her own behalf, the defendant stated that she had been using the bathroom when the officer came to the door; that she answered his call, asked him to wait a moment, and ran back to the bathroom; that she was thereafter arrested without knowledge of the nature of the agents' inquiry; that her younger brothers sometimes play in the bathtub; and that she at no time had any narcotics in her possession at the apartment in question. Other witnesses on her behalf corroborated her version of the arrest, and testified that all of the tenants threw all kinds of rubbish from their bathroom windows.

In rebuttal, the State showed a prior conviction of the defendant for an narcotics offense.

No narcotics were found in the defendant's apartment.

The State theorizes that the defendant had the narcotics in her purse when the agent first appeared; that she ran to the bathroom, locked herself in, and threw the narcotics out the window into the airwell, and that thus, she unlawfully possessed narcotics within the proscription of the statute.

Indeed, this may well have happened. The evidence impels the strong suspicion that this is precisely what happened. The question for decision is whether such a suspicion will suffice to support a conviction.

In *People* v. *Mack,* 12 Ill.2d 151, 159-163, we discussed the elements of possession as a criminal offense in narcotics cases, and the quantum of proof required. We there held that a prosecution satisfies its burden when it proves possession (which may be constructive) of narcotics together with knowledge of the fact of such possession. We there held that the element of knowledge may be proved by conduct indicating that the defendant knew of the existence of the narcotics at the place where they were found. But, as the

*Mack* decision makes clear, knowledge of the location of narcotics is not the equivalent of possession, but merely a necessary element of criminal possession.

The State would have us extend the *Mack* doctrine by holding that suspicious behavior in the vicinity of narcotics is proof not only of knowledge of their presence, but of all of the other elements of criminal possession as well. This we cannot do, however reluctant we may be to disturb the determination of the trier of facts in narcotic cases.

It is to be noted that there was no fingerprint evidence presented by the State. The record does not disclose whether an attempt was made to obtain such evidence, but it is a fair inference that if such an attempt was made, it was unsuccessful. The narcotics were not found in an area, exclusive possession of which was in the defendant; rather, the most that can be said is that the defendant had access to the area, in common with the tenants of seven other apartments and such other persons as might have had access thereto. No investigation was made relative to any of the other apartments or their occupants. In short, there is no evidence sufficient to show that the defendant ever had possession of the narcotic substance. The evidence would, of course, be ample to show guilty knowledge in the defendant if the fact of possession had been proved.

Nor is *People* v. *Matthews,* 18 Ill.2d 164, authority that will support this conviction. For in *Matthews,* we again stated that in prosecutions of this type, the State must "establish that the narcotics were in the immediate and exclusive control of the defendant." (18 Ill.2d 170.) The case at bar simply cannot be equated with the facts of *Mack,* where the narcotics were found in an apartment which had been rented to the defendant; or with the facts of *Matthews,* wherein the defendant admitted the ownership of the narcotics. In legal contemplation, the case against this defendant is no stronger than would be the case against any other tenant of the building who might react in a questionable

manner to an incursion by police authorities. The State's minimum burden was to show that the defendant has exercised some actual or potential dominion over the narcotics. (*People* v. *Poncher*, 358 Ill. 73, 80-81.) This is a burden which clearly has not been carried on the facts presented.

Where possession, actual or constructive, has been shown, an inference of guilty knowledge can be drawn from the surrounding facts and circumstances. (*People* v. *Levy*, 370 Ill. 82, 90-91.) But the fact of such possession must be shown beyond a reasonable doubt, (*People* v. *Nelson*, 18 Ill.2d 298,) and it has not been so shown in this case.

We are not so naive as to ignore the very strong possibility, amounting perhaps to a probability, that the defendant was indeed in possession of the heroin. Mere probabilities, however, will not support a conviction.

The language of *People* v. *Miller*, 315 Ill. 411, 416, seems highly appropriate to this case: "It may be highly probable [defendant] committed some crime for which he should be punished, but his guilt * * * should be proved beyond reasonable doubt. Even bad men cannot be convicted and imprisoned on general principles."

The conviction cannot be sustained. Since it clearly appears of record that there is no evidence available to the State beyond that introduced at the trial, a new trial would not serve any useful purpose. The conviction is, accordingly, reversed.

*Judgment reversed.*