520

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GAIL ALAN STEWART, Defendant-Appellant.

(No. 73-405;

Fifth District—April 18, 1975.

Leon G. Scroggins, of Kinder, Scroggins, & Kinder, of Granite City, for appellant.

Douglas Marti, State's Attorney, of Greenville, and G. Michael Prall, of Illinois State's Attorneys Association, of Bloomington (Stephen M. Deitsch, of counsel), for the People.

Mr. JUSTICE GEORGE MORAN delivered the opinion of the court:

This is an appeal by the defendant, Gail Alan Stewart, from a conviction of unlawful possession of more than 10 grams but less than 30 grams of a substance containing cannabis, in violation of section 4(c) of the Cannabis Control Act (Ill. Rev. Stat., ch. 56½, par. 704(c)). The defendant was sentenced to 6 months' imprisonment and fined $300.

Three issues are raised by the defendant in this appeal. The first is whether the *voir dire* was improperly conducted because the mother of one of the State's witnesses was allowed to serve as a juror. The second is whether certain evidence was improperly admitted in rebuttal. The third is whether there was sufficient proof of unlawful possession. We find it necessary to consider only the third issue presented for review.

The charge against the defendant, Stewart, arose from a report by three women (Mrs. Hubbard, Mrs. Martin and Mrs. Miller) that a quantity of what later proved to be marijuana had been found in an area of a nursing home parking lot immediately after Stewart had left that portion of the lot. Since the State's proof of defendant's possession and knowledge consisted solely of the testimony of these three witnesses, it is necessary that we examine their testimony to determine whether the proof was sufficient.

Mrs. Hubbard, the first of the three women to testify, said that at approximately 10:30 P.M. on October 24, 1973, she was seated in her car on the nursing home parking lot waiting to work in the nursing home at 11 P.M. She saw the defendant pull into the same lot and park his auto. Parked next to the defendant's car was another auto, and between the two was a light pole supporting a "dusk to dawn" light. The light caused the area around the defendant's car to be illuminated like daylight. The defendant got out of his car and walked to the front of the car when he leaned "halfway" over or "maybe not even halfway" over.

It appeared that he might be putting a note on the windshield of the car parked next to his own car. She did not see anything thrown out of the defendant's car. When the defendant turned around, she was able to see his face and recognize him to be Stewart. The defendant returned to his car and drove away.

Mrs. Martin next testified that she and Mrs. Miller were seated in a car at another spot in the same lot at approximately 10:30 P.M. and were also waiting to report to work at 11 P.M. The defendant drove in and parked. They were approximately 50 feet from where the defendant's car was parked. The area around the defendant's car was sufficiently lighted by the light next to the defendant's car so that she was able to see the color of the defendant's hair. She saw the defendant walk over to the light pole and stoop over; she did not see the defendant drop anything. After the defendant drove away, she and Mrs. Miller walked to the area where the defendant had been and she picked up a cellophane bag containing leaves and stems.

Mrs. Miller then testified that she saw the defendant pull in and park next to the light pole approximately 50 feet from where she and Mrs. Martin sat in their car. The light in the area around the defendant's car was good, and she was able to tell that the defendant had blonde hair. She saw the defendant walk over to the light pole and stoop over so that his head came within a few inches of the ground. She did not see anything in his hand nor did she see anything thrown from his car. After the defendant drove away she and Mrs. Martin walked to the light post and there Mrs. Martin found a cellophane bag containing stems and leaves.

From the testimony of these three witnesses it is clear that none of them saw the defendant with the marijuana at any time, nor did any of them see anything thrown from the defendant's car. This is so despite the fact that each of the three witnesses described the light around the defendant as sufficiently bright that she either could see the defendant's face or tell the color of his hair.

■■■ The proof required of the State for a conviction of unlawful possession of narcotics is stated clearly in *People v. Galloway,* 28 Ill.2d 355, 358, 192 N.E.2d 370:

> "To support a conviction of the crime of unlawful possession of narcotic drugs the People must prove not only that the accused had knowledge of the presence of the narcotics, but also that they were in his immediate possession and control. (*People v. Smith,* 20 Ill.2d 345; *People v. Matthews,* 18 Ill.2d 164.) At the same time, however, we have adopted the view that actual physical possession is not required to be proved, it being sufficient if con-

structive possession is established, and further, because the element of knowledge is seldom susceptible of direct proof, have held that knowledge may be proved by evidence of acts, declarations or conduct of the accused from which it may be fairly inferred that he knew of the existence of the narcotics at the place where they were found."

Circumstantial evidence is very often used to prove unlawful possession of narcotics. As in all criminal cases, however, due process requires that proof of the defendant's guilt be beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 25 L.Ed.2d 368, 90 S.Ct. 1068.

In some cases, control of the premises on which narcotics have been found has, absent other circumstances, been held sufficient to prove possession of the narcotics. (See *People v. Nettles,* 23 Ill.2d 306, 178 N.E.2d 361; *People v. Mack,* 12 Ill.2d 151, 145 N.E.2d 609; *People v. Embry,* 20 Ill.2d 331, 169 N.E.2d 767.) In other cases possession has been proven on the basis of the testimony of policemen that narcotics were recovered in a particular location immediately after they saw the defendant making a suspicious motion as if to rid himself of narcotics or other contraband. See *People v. Richardson,* 21 Ill.2d 435, 172 N.E.2d 801; *People v. Mills,* 98 Ill.App.2d 248, 240 N.E.2d 302.

■■ Nevertheless, in all cases the requirement of proof beyond a reasonable doubt requires that the inference of the defendant's possession of the narcotics be more than a mere possibility. (*People v. Jackson,* 23 Ill.2d 360, 178 N.E.2d 320; *People v. Nelson,* 18 Ill.2d 298, 164 N.E.2d 21; *People v. Dougard,* 16 Ill.2d 603.) A conviction cannot be allowed to stand on mere conjecture, speculation, or surmise as to how the narcotics arrived at where they are found. (*People v. Mosley,* 131 Ill.App.2d 722, 265 N.E.2d 889; *People v. Faulkner,* 83 Ill.App.2d 54, 226 N.E.2d 467.) Neither will the mere presence of the defendant at the place where narcotics are then or afterward found be sufficient to establish his guilt. *People v. Boyd,* 17 Ill.2d 321, 161 N.E.2d 311; *People v. Minkin,* 133 Ill.App.2d 549, 273 N.E.2d 729; *People v. Connie,* 52 Ill.App.2d 221, 201 N.E.2d 641.

In *People v. Evans,* 72 Ill.App.2d 146, 218 N.E.2d 781, the evidence disclosed that the appellant was arrested in a tavern by three policemen who were told by an informer that a man of his description possessed narcotics. The informer's name was given only as "Herbie." The evidence given by the two policemen who testified at the trial indicates that when the appellant and his companion saw the policemen approach them, they rose from their seats at the bar and hurried toward the men's room. No narcotics were found on the person of either man, but the police did find two cigarette packages containing narcotics stuck with

chewing gum under the front of the bar. There was no evidence that anyone saw either man put the packages there. The appellate court held that under the rationale of *People v. Jackson,* 23 Ill.2d 360, 178 N.E.2d 320, the conviction could not stand, saying at pages 148-49:

> "The facts in the case at bar are sufficiently parallel to the facts in the Jackson case to compel this court to the same conclusion. In Jackson the inspectors had obtained a search warrant, a fact implying they had information from some source which gave probable cause for such a warrant to be issued; here the police received information from an unidentified informant. In Jackson the appellant acted in a manner not totally consistent with innocence in that she fled from the inspectors and locked herself in the bathroom; here the appellant and his companion, when they saw the police approach, attempted to enter the men's room. In Jackson narcotics were found under circumstances which raised a strong inference that the appellant had possessed the contraband; the same might be said to be true here, and here, as in Jackson, no fingerprint evidence was brought in by the People.
>
> As the Supreme Court said in Jackson, mere suspicious conduct in the vicinity of narcotics is not enough to establish the elements of criminal possession."

The State would have us equate the instant case with *People v. Mills* or *People v. Richardson.* In *Mills* the defendant was a passenger in the rear seat of a cab which the police had pulled over for investigation. As the cab was being pulled over, the police turned a spotlight to the rear window of the cab. At that point, after the defendant was conscious of the presence of the police, he was seen to make a twisting motion to the right side of the rear seat. Immediately thereafter the police found heroin under that part of the rear seat to which the defendant's twisting motion had been directed. This circumstantial evidence was held to be sufficient to support the defendant's conviction for possession.

In *Richardson* two plain-clothed policemen, while approaching the defendant and his companion, overheard the companion tell the defendant that the approachers might be policemen. The policemen then saw the defendant make a motion which suggested that he was throwing something to the ground. The policemen then found a cigarette package containing heroin a few feet from the defendant. This circumstantial evidence was held sufficient to convict the defendant.

In the instant case, however, there was no evidence that the defendant's movements were in any way related to an apprehension that he was being approached or observed by policemen or anyone else. Whereas in *Mills* and *Richardson,* the otherwise ambiguous movements of the

defendants are explainable with more certainty when viewed in light of the defendant's awareness of the presence of the police, the movements of the defendant in the instant case are not so explainable. In short, the inference of possession in the instant case is much weaker than in *Mills* or *Richardson.*

■■ The State also points to the fact that no one was seen in the area where the marijuana was found between the time the defendant departed and the time the marijuana was discovered. The State submits that the inference of possession by the defendant is therefore stronger. We are aware from *Mills* that a mere possibility that the narcotics were present where found before the arrival of the defendant will not automatically require reversal of the conviction if the evidence otherwise proves the defendant's guilt beyond a reasonable doubt. (*People v. Mills,* 98 Ill.App.2d 248, 257.) But the possibility must be viewed in light of all the evidence. In the instant case three eyewitnesses watched the defendant's movements. Despite the ability of each eyewitness to see other details, such as the defendant's face or the color of his hair, none of them saw anything in the defendant's hand or anything thrown out of defendant's car.

■■ At most we can only say that this case involves the discovery of narcotics in an area where the defendant had been seen behaving suspiciously. As in *People v. Jackson* and in *People v. Mosley,* the defendant's behavior would be sufficient to show guilty knowledge on the part of the defendant if possession had been proved, but not sufficient to show possession.

■■ As the court said in *People v. Miller,* 315 Ill. 411, 416, and again in *People v. Jackson,* 23 Ill.2d 360, 365:

> "It may be highly probable [defendant] committed some crime for which he should be punished, but his guilt * * * should be proved beyond a reasonable doubt."

Since the evidence is "not sufficient to remove all reasonable doubt of defendant's guilt and create an abiding conviction that he is guilty," we must reverse. (*People v. Dougard,* 16 Ill.2d 603, 607.) Furthermore, as in *Dougard,* since it does not appear that there are witnesses available other than those who have already testified, we will not remand for a second trial.

Judgment reversed.

JONES, P. J., and CARTER, J., concur.