THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GROVER MARION, Defendant-Appellant.

Third District   No. 79-952

Opinion filed August 29, 1980.

Robert Agostinelli and Charles W. Hoffman, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

In this appeal by the defendant, Grover Marion, from his conviction for the unlawful possession of less than 30 grams of a substance containing L.S.D., three issues are raised. Initially, we can summarily dispose of the question of the constitutionality of the recoupment statute, which was the authority upon which the trial court based its order that the defendant's bail bond deposit be applied to repay the county for the expenses incurred by the public defender in representing the defendant. The Illinois Supreme Court has already determined the statute to be unconstitutional. *People v. Cook* (1980), 81 Ill. 2d 176, 407 N.E.2d 56.

The remaining two issues are whether the defendant was proved

guilty beyond a reasonable doubt and whether the trial court erred by refusing to give both paragraphs of IPI Criminal No. 3.02, an instruction on the use of circumstantial evidence, as tendered by the defendant. To determine each of these issues, a review of the facts educed at the trial must be had.

The State's first witness was Officer Ray Kapsch. Kapsch testified that on September 26, 1978, he was on patrol looking for a hit and run vehicle when he observed two cars, one red and one light brown or yellow, which were parked so as to block the street. Over his loudspeaker, Kapsch told the drivers to move or be ticketed. The two cars left, and Kapsch continued on patrol. When he returned several minutes later, the two cars had returned and were again blocking the street. The defendant was standing alongside the light colored car leaning into the open window on the driver's side.

As Kapsch pulled alongside the vehicle he observed that the defendant had his left arm extended into the vehicle with his hand open in front of the face of the driver seated within. Kapsch also observed what appeared to be a packet inside the defendant's palm. At that time the defendant turned and faced Kapsch and clenched his fist. Kapsch stopped his car and motioned for the defendant to stay where he was. The defendant began to walk toward the rear of the squad car. As he did so, Kapsch kept his eye on the defendant and saw the defendant's left shoulder and arm move. Kapsch exited his squad car and told the defendant to put his hands on the car and not to move. As Kapsch went to the front of the squad car, the defendant moved toward the back. The two men went back and forth in this manner three or four times. Finally, Kapsch went to the rear of the squad car to check the area where he thought the defendant had thrown something. Underneath the squad car, just to the rear of the right rear tire, Kapsch observed a piece of cellophane which contained several green tablets. The cellophane was clear and did not appear dirty. Kapsch picked it up and put it in his pocket.

At this time the defendant began to walk away from the scene very fast. Kapsch told the defendant to "go ahead," that he would "see him later."

Kapsch identified People's exhibit No. 1 as the cellophane packet with the green tablets he had found on September 26, 1978. Kapsch stated that from the time he arrived until he picked up the cellophane there was no one close to the two cars other than the defendant and the two people seated in the light colored car. However, Kapsch stated, "there could have been people in the immediate area."

On cross-examination Kapsch acknowledged that he could not tell anything about the packet he observed in the defendant's hand as he leaned into the light-colored vehicle, other than that it was clear, and

about one inch in size. Kapsch could not state whether it was made of cellophane. Kapsch also acknowledged that when the defendant moved his left arm and shoulder he could not see the defendant's hand, but could only see defendant's arm from the elbow to the biceps area.

Finally, Kapsch acknowledged on cross-examination that he had previously testified in a manner inconsistent with his trial testimony in several respects. Kapsch had previously testified that he discovered the cellophane packet behind the rear wheel of the light-colored car, not the squad car, and that he had exited his squad car and had gone back and forth several times with the defendant before he saw the defendant make the gesture with his arm. In addition, he had previously testified that the defendant's gesture was to move his shoulder backwards, which was the opposite direction Kapsch testified to at trial. On redirect examination, however, Kapsch stated that he had corrected his prior testimony as to the location of the packet and the timing of the defendant's gesture before leaving the witness stand on the date of his prior testimony.

The State next presented the testimony of a chemist who identified the green tablets located in People's exhibit No. 1 as being .17 grams of a substance containing L.S.D. Following presentation of stipulations on the chain of evidence the State rested its case-in-chief.

For the defense, Mr. Leonard King testified that he was employed by the Elgin, Joliet and Eastern Railroad and also taught karate. King had known the defendant practically all his life.

On September 26, 1978, King had a conversation with the defendant in the vicinity of Englewood and Robin Lane. The defendant walked over to King's car and leaned into it. King did not see anything in the defendant's hands, but as they talked a Joliet police officer arrived on the scene.

King stated that he saw the officer pick an object up from in front of King's car, but that the defendant had been standing at the side of King's car when this occurred. King also stated that when the defendant walked away he went across the street but stayed in the area. King waited to see if the officer wanted him for any reason. When the officer did not say anything King left and returned to work.

On cross-examination King acknowledged that he spoke with Officer Stewart on October 31, 1978. King denied, however, that he had told Stewart that the defendant had an object in his hand or that when the squad car arrived the defendant acted in a paranoid manner, or that the police officer picked an object up off the ground from the exact location where the defendant had been standing.

The defendant, testifying in his own behalf, stated that on September 26, 1978, as he was speaking with Leonard King, a police officer passed by and told them to move their cars from the street. This they did. The defendant then returned to talk with King. Five minutes later the officer

returned, pulled up to the defendant and said "don't move." The defendant testified that he then walked away because he did not have a driver's license. He thought the police officer was going to question him about driving the car, which belonged to the defendant's wife. According to the defendant, he walked across the street and stayed there until the police officer left. There were 15 to 20 other people in the area.

The defendant did not see the officer pick anything up. He stated that he did not have any green pills in his possession and knew nothing about People's exhibit No. 1.

In rebuttal, the State presented Police Officer James Stewart. Stewart testified that on October 3, 1978, he interviewed Leonard King. King told him that on the day of the incident in question, as defendant approached King's car, King could clearly see an object in defendant's hand, although King did not know what the object was. King also told Stewart that when the squad car arrived the defendant acted in a paranoid manner. Stewart also testified that King told him that after the defendant ran from the area the officer picked an object up from the exact location where the defendant had been standing.

■■ As phrased by the defendant, the first issue is whether the defendant "was not proven guilty beyond a reasonable doubt where the State's evidence only established a possibility as to defendant's possession of L.S.D. and where the testimony of the State's chief witness was substantially impeached." This court has previously noted that although the defendant's possession may be a reasonable assumption, a conviction can not be supported by assumption, conjecture or speculation (*People v. Boswell* (1974), 19 Ill. App. 3d 619, 312 N.E.2d 17), for in deciding questions of guilt the courts do not deal in probabilities, but require proof beyond a reasonable doubt (*People v. Blackman* (1978), 62 Ill. App. 3d 726, 379 N.E.2d 344).

In *People v. Jackson* (1961), 23 Ill. 2d 360, 178 N.E.2d 320, the defendant was found guilty of the unlawful possession of narcotic drugs. The facts established that when the police appeared at her door the defendant locked herself in the bathroom. When she finally allowed them access to the bathroom she was accused of having flushed narcotics down the toilet. However, upon inspection the bathroom facilities did not appear to have been used in that fashion, but the window opened onto an airwell, as did those of seven other apartments. A package of heroin was found at the bottom of the airwell. In analyzing the case against the defendant, the Illinois Supreme Court stated:

> "It is to be noted that there was no fingerprint evidence presented by the State. The record does not disclose whether an attempt was made to obtain such evidence, but it is a fair inference that if such an attempt was made, it was unsuccessful. The narcot-

ics were not found in an area, exclusive possession of which was in the defendant; rather, the most that can be said is that the defendant had access to the area, in common with the tenants of seven other apartments and such other persons as might have had access thereto. No investigation was made relative to any of the other apartments or their occupants. In short, there is no evidence sufficient to show that the defendant ever had possession of the narcotic substance. The evidence would, of course, be ample to show guilty knowledge in the defendant if the fact of possession had been proved.

* * * In legal contemplation, the case against this defendant is no stronger than would be the case against any other tenant of the building who might react in a questionable manner to an incursion by police authorities. The State's minimum burden was to show that the defendant has exercised some actual or potential dominion over the narcotics. (*People v. Poncher*, 358 Ill. 73, 80-81.) This is a burden which clearly has not been carried on the facts presented.

Where possession, actual or constructive, has been shown, an inference of guilty knowledge can be drawn from the surrounding facts and circumstances. (*People v. Levy*, 370 Ill. 82, 90-91.) But the fact of such possession must be shown beyond a reasonable doubt, (*People v. Nelson*, 18 Ill. 2d 298,) and it has not been so shown in this case.

We are not so naive as to ignore the very strong possibility, amounting perhaps to a probability, that the defendant was indeed in possession of the heroin. Mere probabilities, however, will not support a conviction." 23 Ill. 2d 360, 364-65, 178 N.E.2d 320, 322.

The State attempts to distinguish the *Jackson* decision by arguing that, unlike the case at bar, there had been no showing of any connection between the defendant's activities and the drugs found. The connecting facts in the present case, according to the State, are that what appeared to be a packet to Officer Kapsch was observed in the defendant's hand and that the defendant made a motion with his arm which might be indicative of his throwing something away.

We agree that *Jackson* is distinguishable and find the evidence to be sufficient to support the conviction. In *People v. Richardson* (1961), 21 Ill. 2d 435, 172 N.E.2d 801, the defendant and a companion were observed by two police officers in an alley in an area depopulated as a result of buildings being razed. At the approach of the unmarked police car the defendant asked his companion who might be the occupants of the car. Upon being told it was the police, the defendant made a motion which suggested to one of the police officers that something was being thrown to the ground. A search turned up a cigarette package containing heroin.

The evidence presented in *Richardson* established that these two individuals were the only persons in the area. In the case at bar, if the State's primary witness was believed, the jury could find that the defendant and the persons in the light-colored car were the only persons close to the cars, even though other persons may have been in the area. Although the defense attempted to impeach the testimony of Officer Kapsch, it remains the jury's function to assess credibility (*People v. Morgan* (1963), 28 Ill. 2d 55, 190 N.E.2d 755), and we can not say that such a finding is against the manifest weight of the evidence.

Furthermore, while the defendant tendered IPI Criminal No. 3.02 in its entirety, it was not error for the trial court to give only the first paragraph. Only if the evidence against the defendant is entirely circumstantial need both paragraphs of IPI Criminal No. 3.02 be given. See *People v. Godsey* (1978), 57 Ill. App. 3d 364, 373 N.E.2d 95, *rev'd on other grounds* (1978), 74 Ill. 2d 64, 383 N.E.2d 988; *People v. Minish* (1974), 19 Ill. App. 3d 603, 312 N.E.2d 49.

■■ In the case at bar there was direct evidence of the defendant's guilt. He was seen holding a packet and was subsequently observed to make a motion as though he was throwing something away. Immediately thereafter a packet containing L.S.D. was found at the very point toward which the defendant had made the motion, and that packet was introduced into evidence. This is direct evidence requiring the giving of only the first paragraph of IPI Criminal No. 3.02.

For the foregoing reasons that portion of the judgment of the Circuit Court of Will County which directed that the defendant pay the costs of his court appointed counsel from his cash bail deposit is reversed and vacated. The judgment of conviction of the defendant and the sentence imposed thereon are affirmed.

Affirmed in part and reversed in part.

ALLOY, P. J., and STENGEL, J., concur.