(No. 67757.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. OSCAR PINTOS, Appellant.

*Opinion filed December 21, 1989.*

MILLER, J., specially concurring.

Thomas D. Decker and Richard M. McLeese, of Thomas D. Decker & Associates, Ltd., of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Cecil A. Partee, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Inge Fryklund and Adam D. Grosch, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CLARK delivered the opinion of the court:

Defendant, Oscar Pintos, was convicted in the circuit court of Cook County of intent to deliver more than 30 grams of a controlled substance (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(a)(2)). Pintos' conviction was affirmed by the appellate court. (172 Ill. App. 3d 1096.) We granted defendant's petition for leave to appeal (107 Ill. 2d R. 315). Pintos' sole argument on appeal is that the evidence in his case was insufficient to support his conviction.

These proceedings arose from a drug transaction which took place on October 13 and October 14, 1984. The State's witnesses at trial consisted of four special agents from the Northeast Metropolitan Enforcement Group (MEG), two agents from the Federal Drug Enforcement Agency (DEA) and a forensic scientist from the Illinois Department of State Police. Their testimony established that in October 1984, Manuel Diaz, a Florida resident, began telephone negotiations with an undercover agent from the MEG for the sale of cocaine. Diaz eventually agreed to deliver eight kilograms of cocaine to the agent in Chicago.

On the evening of October 13, 1984, agents from the MEG and the DEA observed Diaz's arrival from Florida at O'Hare International Airport. The agents followed Diaz to the Westin Hotel in Rosemont, Illinois. After learning that Diaz had reserved rooms 808 and 809 of the hotel for that evening, the agents set up surveillance

in rooms 818 and 819, which were directly across the hall from rooms 808 and 809.

Later in the evening of October 13, 1984, Diaz met with the undercover MEG agent at a Chicago restaurant and told him that he could deliver eight kilograms of cocaine for $340,000. They arranged for the sale to take place the next morning. Diaz then told the agent that he had to be back at the hotel at 11 p.m. that evening "because he had to meet the drivers who were driving the coke up from Florida, had to be there to meet him [*sic*] in his room."

At about 1:40 a.m. on October 14, 1984, agents from the MEG and DEA observed, through a peephole in the door to room 819, two men standing outside of Diaz's room (room 809). One man, later identified as Ramon Sosa, was carrying a gift-wrapped box and a bag. The flaps of the box were open and the agent could see what looked like crumpled newspapers sticking out of the box. Defendant, Oscar Pintos, was with Sosa; Pintos was carrying a garment bag and a flight bag. Pintos knocked on the door and Diaz let the men into his room. About one minute later, all three men left Diaz's room. Sosa continued to carry the box (the flaps were now "compressed down") and his bag, and Pintos continued to carry his two bags. Diaz then unlocked, and Sosa and Pintos entered, room 808, where Sosa and Pintos spent the rest of the night. Diaz returned to his room alone. The cardboard box remained in the room with Sosa and Pintos.

At approximately 8 a.m. on the morning of the 14th, Diaz went into the room where Sosa and Pintos had spent the night. Room service delivered food to the room and, shortly thereafter, Diaz left and returned to his room (room 809). Sosa then left his room and walked down the hall. He was gone for several minutes before he returned to room 808.

At about 9:30 a.m., the undercover MEG agent who had met with Diaz at the restaurant the previous night knocked on Diaz's door. Diaz let the agent into his room and then went to room 808, where he knocked on the door and was admitted into the room. Diaz then left that room, leaving the door slightly open. Diaz returned to his room (room 809), carrying the gift-wrapped box which Sosa had been holding the night before; the end flaps of the box were now open.

Back in his own room, Diaz opened the box for the undercover agent. The box contained nine individually wrapped kilograms of cocaine. The undercover agent tested part of one of the kilograms of cocaine and left the room, telling Diaz that he would return shortly with the money. As he left, the undercover agent gave a signal to the agents in rooms 818 and 819 that the drugs were in room 809. The undercover agent then knocked on Diaz's door and, when Diaz opened it, the agents from rooms 818 and 819 placed Diaz under arrest and confiscated the cocaine. The agents subsequently knocked on the door to room 808, which had been shut while Diaz was being arrested, and arrested Sosa and Pintos.

Sosa and Pintos were charged with intent to deliver more than 30 grams of a controlled substance (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(a)(2)) and with calculated criminal drug conspiracy (Ill. Rev. Stat. 1983, ch. 56½, par. 1405). They were tried simultaneously, Pintos in a bench trial and Sosa in a jury trial. Pintos was found guilty of intent to deliver and not guilty of criminal conspiracy and was sentenced to eight years' imprisonment. The appellate court affirmed his conviction. 172 Ill. App. 3d 1096.

Pintos argues that the evidence was insufficient to support his conviction. Pintos states, and we agree, that the evidence in his case is entirely circumstantial. Ac-

cordingly, Pintos claims that the evidence should be reviewed under the reasonable hypothesis of innocence standard. The State, on the other hand, argues that the reasonable hypothesis of innocence test is no longer viable in Illinois and urges this court to apply the reasonable doubt test to review the sufficiency of the evidence.

It is true, as Pintos asserts, that this court in the past had considered it "unquestioned" that the proper standard of review in wholly circumstantial evidence cases was the reasonable hypothesis of innocence test. (*People v. Willson* (1948), 401 Ill. 68, 79; see also *People v. Rhodes* (1981), 85 Ill. 2d 241, 249; *People v. Lewellen* (1969), 43 Ill. 2d 74, 78.) However, in *People v. Linscott* (1986), 114 Ill. 2d 340, this court tacitly rejected the reasonable hypothesis of innocence standard of review by utilizing the reasonable doubt test to affirm a conviction that had been based entirely on circumstantial evidence. (See *Linscott*, 114 Ill. 2d at 353 (Clark, C.J., dissenting).) This court's rejection of the reasonable hypothesis of innocence standard of review in circumstantial evidence cases was made explicit in *People v. Eyler* (1989), 133 Ill. 2d 173, 191-92. In light of our decisions in *Eyler* and *Linscott*, we agree with the State: the reasonable hypothesis of innocence standard of review is no longer viable in Illinois. Instead, we find that the reasonable doubt test as set forth in *People v. Collins* (1985), 106 Ill. 2d 237, 261, should be applied in reviewing the sufficiency of evidence in all criminal cases, whether the evidence is direct or circumstantial.

Pintos claims that even under the reasonable doubt test, the evidence in his case is insufficient to support his conviction. The elements of the crime of unlawful possession of narcotics with an intent to deliver are: (1) the defendant had knowledge of the presence of narcotics; (2) the narcotics were in the immediate control or possession of the defendant; and (3) the defendant intended

to deliver the narcotics. (See *People v. Embry* (1960), 20 Ill. 2d 331, 334; *People v. Knight* (1985), 133 Ill. App. 3d 248, 259.) Pintos argues that the evidence fails to establish that he had knowledge of the presence of the cocaine. We do not agree.

The evidence in this case, when viewed in the light most favorable to the prosecution (see *Collins*, 106 Ill. 2d at 261), establishes that Pintos and Sosa drove up from Florida with nine kilograms of cocaine. They appeared at Diaz's hotel room, with Sosa carrying a cardboard box that contained the nine kilograms of cocaine. The flaps to the box were open. Pintos then knocked on Diaz's door and Pintos and Sosa were allowed into the room by Diaz. Shortly thereafter, all three men exited the room and went to a room next door, where Diaz unlocked the door. The three men then entered the room, with Sosa carrying the now-closed cardboard box. Pintos and Sosa spent the night in the room. The next morning, an undercover agent went to Diaz's hotel room to purchase from him eight kilograms of cocaine. Diaz then went back to Pintos and Sosa's room and got the cardboard box with the cocaine in it and brought it back for the undercover agent. The flaps on the cardboard box at this time were open.

We find that a rational trier of fact could infer from this evidence that Pintos had knowledge that the cardboard box contained cocaine. The mere fact that there was no direct evidence that Pintos carried or saw what was in the box does not, as a matter of law, preclude a finding that he had knowledge. As this court stated in *Embry*, 20 Ill. 2d at 334, "[t]he element of knowledge is hardly ever susceptible of direct proof, but it may be proved by evidence of acts, declarations or *conduct* of the accused from which the inference may be fairly drawn that he knew of the existence of the narcotics at the place where they were found." (Emphasis added.)

(See also *People v. Jackson* (1961), 23 Ill. 2d 360, 364 (knowledge of existence of narcotics can be proven by showing defendant's suspicious behavior in the vicinity of the narcotics); *People v. Mack* (1957), 12 Ill. 2d 151, 159-61 (same).) Pintos' conduct, in accompanying Sosa and repeatedly meeting with Diaz and Sosa during the time Diaz was arranging the drug transaction with the undercover agent, supports the inference that he had knowledge of the contents of the box. Accordingly, we affirm the appellate court's decision affirming Pintos' conviction.

*People v. Jackson* (1961), 23 Ill. 2d 360, and *People v. Boswell* (1974), 19 Ill. App. 3d 619, cited by Pintos in support of his claim that the evidence here is insufficient to establish that he had knowledge of the cocaine's presence, are not inconsistent with our determination here. The issue in those cases, unlike the instant case, was not whether the State had established the requisite knowledge to support a conviction for possession of narcotics. Instead, those cases involve the question of whether the element of possession had been established and merely hold that a narcotics possession conviction cannot stand where there has been no showing that the defendant ever possessed the narcotics at issue. (*Jackson*, 23 Ill. 2d at 364; *Boswell*, 19 Ill. App. 3d at 621.) Pintos has not argued here that the evidence failed to show that he possessed the cocaine.

For the foregoing reasons, the judgment of the appellate court, affirming the conviction of Oscar Pintos, is affirmed.

*Affirmed.*

JUSTICE MILLER, specially concurring:

I concur in the court's judgment but write separately to make clear the basis for my agreement.

In *People v. Bryant* (1986), 113 Ill. 2d 497, we dispensed with the "reasonable theory of innocence" charge contained in the pattern jury instruction on circumstantial evidence. Intended for use in cases in which there was no direct evidence of the guilt of the accused, that portion of the instruction advised jurors, "You should not find the defendant guilty unless the facts or circumstances proved exclude every reasonable theory of innocence." (Illinois Pattern Jury Instructions, Criminal, No. 3.02 (2d ed. 1981).) *Bryant* quoted the United States Supreme Court's disapproval of such a jury instruction in *Holland v. United States* (1954), 348 U.S. 121, 139-40, 99 L. Ed. 150, 166-67, 75 S. Ct. 127, 137-38. Consistent with *Holland*, we noted in *Bryant* that a single standard of proof governs all cases, regardless of the type of evidence adduced, and we criticized the "reasonable theory of innocence" charge as an obscure and misleading attempt to define the single reasonable doubt standard. We concluded that the "reasonable theory of innocence" charge should no longer be used. *Bryant*, 113 Ill. 2d at 510-12.

It should have been clear, following our decision in *Bryant*, that the "reasonable theory of innocence" formulation could not be used in the appellate process as either a definition of reasonable doubt or a separate standard of review. As *Bryant* indicated, there is no intrinsic difference among prosecutions based on circumstantial evidence, prosecutions based on direct evidence, and prosecutions based on a combination of the two. By the same token, all claims of evidentiary insufficiency on review should be decided under a single standard, whatever the nature of the evidence. Nothing can be gained on appeal by redefining the applicable standard in the obscure and misleading language we have rejected for jury use.