THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BENJAMIN F. JONES, Defendant-Appellant.

Fifth District    No. 80-358

Opinion filed May 5, 1982.—Rehearing denied June 1, 1982.

Mary Robinson and John J. Barrett, both of State Appellate Defender's Office, of Elgin, for appellant.

Don W. Weber, State's Attorney, of Edwardsville (Martin N. Ashley, of State's Attorneys Appellate Service Commission, and David J. Mullett, research assistant, of counsel), for the People.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

Defendant, Benjamin F. Jones, appeals from a judgment of conviction entered on a jury verdict in the Circuit Court of Madison County finding him guilty of the offense of unlawful possession of a controlled substance in violation of section 402(b) of the Illinois Controlled Substance Act. (Ill. Rev. Stat. 1979, ch. 56½, par. 1402(b).) He was sentenced to a term of four years' imprisonment.

On appeal, defendant raises the following issues: (1) whether the office of the State Appellate Defender should be allowed to withdraw as counsel on appeal because a conflict of interest arose from the representation of defendant and the prior representation of another individual charged as a result of the same incident; (2) whether there was sufficient evidence to prove beyond a reasonable doubt that defendant was in possession of the controlled substance; (3) whether defendant was denied a fair trial by the admission of three photographs depicting a weapon and suggesting the commission of another crime; and (4) whether the trial court committed reversible error in allowing a rebuttal witness to testify as to a collateral matter concerning other crimes' evidence. We find it necessary to consider only the first two issues presented for review.

The evidence established that on December 14, 1979, Officer Albrecht of the Alton Police Department was called to a Madison County housing project to investigate a trespassing complaint. Upon his arrival, Albrecht met Barbara Martin, the manager of the project, and she accompanied him to an apartment located at 258 Dooley Drive. As they approached the apartment, they heard music playing inside. Martin knocked on the door, received no response, and, thereupon, opened the door with her passkey.

Albrecht testified that he saw Charles Anthony Covington lying on a couch in the living room of the apartment. As Albrecht and Martin entered the room, Covington sat up and called out that the police had arrived. Albrecht then saw a hand gun on the coffee table, picked it up and unloaded it. Shortly thereafter, defendant came from upstairs and entered the living room.

Albrecht testified that he informed both defendant and Covington that he was investigating a trespassing complaint and that the last authorized tenant had vacated the apartment. According to Albrecht, defendant responded that his mother had moved out of the apartment about two months prior and because the apartment was unoccupied, defendant, about two weeks ago, decided to move into the apartment. Albrecht further testified that defendant stated that he was the only person living at the apartment; Covington and James Jennings, who was discovered upstairs, were his guests. Albrecht testified that during this conversation, defendant walked towards a closet in the corner of the living room and reached inside. Albrecht then ordered defendant to sit down. Albrecht stated that he was unable to see what defendant was doing in the closet. Albrecht testified that Officer Arbuthnot of the Alton Police Department arrived immediately prior to this conversation with defendant. Thereafter, defendant and Covington were arrested and taken to the police station by Arbuthnot. Arbuthnot testified that he did not see defendant walk to the closet.

After obtaining Martin's written consent, several police officers searched the apartment. Albrecht testified that he discovered a small amber vial containing a brown powder on a shelf in the living room closet. Albrecht also testified that there were various items located on the coffee table including drug paraphernalia, handcuffs, an envelope and a gun. The unopened envelope was addressed to defendant at 258 Dooley Drive. He identified these items in three photographs introduced by the State. Albrecht stated that he did not remember seeing any clothing, sheets, towels or personal items other than a box containing wadded up clothing.

Detective Whipple of the Alton Police Department testified that he was called to the apartment to investigate and to take photographs. He stated that the small amber vial, photographed as it was discovered on the shelf in the living room closet, was within an arm's length of the closet entrance. Whipple also identified from the photographs the various items found on the coffee table.

Randall Robbins, a forensic scientist employed by the State of Illinois, testified that the substance in the vial was heroin.

At the close of the State's case, the trial court admitted into evidence the three photographs of the items on the coffee table over objection of defendant.

Testifying in his own behalf, defendant denied that he told Albrecht he was living at 258 Dooley Drive. Defendant stated that during the month of December 1979, he lived at 849 Oakwood Avenue with Carol Crouder and her child. He testified that his mother moved from the apartment in August 1979, to Racine, Wisconsin. Defendant further testified that during a visit to his mother in November 1979, she asked him to move her furniture from the apartment to a friend's basement. He stated that he arrived at the apartment in order to move the furniture only minutes before the police arrived.

At trial, defendant denied that he placed the vial in the closet and he denied that any of the items found on the coffee table belonged to him. He stated that he reached into the closet in order to get his coat. He further testified that he had not seen the envelope prior to trial.

The defense witnesses testified in support of defendant's claim that he was not living at 258 Dooley Drive. Covington testified that he arrived at the apartment early that morning in order to help defendant move his mother's furniture. He stated that he was convicted of illegal possession of a weapon as a result of the incident which occurred on December 14, 1979. According to Covington, the heroin belonged to James Jennings. Dorothy Parks, defendant's mother, and her friend, Joe Willie Vans, corroborated defendant's claim that he went to the apartment in order to move the furniture. Carol Crouder testified that defendant had lived with her for the past year and a half, and spent every night with her.

Martin testified that she saw defendant walk to the closet and reach inside it but was unable to see what he did.

Over objection of defendant, Officer Jack Fields, jail superintendent of the Madison County Jail, testified on rebuttal that defendant was incarcerated at the county jail from May 8, 1979, to June 17, 1979.

On July 29, 1980, the trial court denied defendant's post-trial motions. Thereafter, defendant filed notice of appeal and the State Appellate Defender was appointed to represent him. On January 28, 1981, the State Appellate Defender moved to withdraw as counsel on the ground that a conflict of interest arose from its prior representation of Charles Anthony Covington who was convicted of unlawful use and possession of a weapon in a separate trial. The motion was denied by this court, and the supreme court denied the State Appellate Defender's application for a writ of *mandamus* directing this court to grant the motion to withdraw.

Defendant first contends that the State Appellate Defender should be allowed to withdraw as counsel because of a conflict presented by the representation of defendant and the prior representation of Covington.

We recently discussed the problems raised by a conflict of interest in appellate representation in *People v. Rogers* (1981), 101 Ill. App. 3d 614, 428 N.E.2d 547. While noting that the supreme court in *People v. Robinson* (1979), 79 Ill. 2d 147, 402 N.E.2d 157, declined to adopt a *per se* rule that a conflict as to one attorney in a public defender's office is a conflict as to all attorneys in that office, we acknowledged that unlike the public defender system, the State Appellate Defender system is by statute centralized in one office with five district offices. (Ill. Rev. Stat. 1979, ch. 38, par. 208—1 *et seq.*) In *Rogers*, we held that because of the critical distinctions between trial representation and appellate representation, a less rigorous standard for determination of the existence of a conflict of interest should be applied to appellate representation. We stated further that this determination should be made on a case-by-case basis consistent with the guidelines expressed by the supreme court in *People v. Nelson* (1980), 82 Ill. 2d 67, 72-73, 411 N.E.2d 261, 264-65.

Covington was represented on appeal by the Deputy Defender in the Fifth District Office in Mt. Vernon. Defendant's appeal was transferred by the State Appellate Defender to the Second District Office in Elgin. On appeal, Covington sought reversal of his conviction because there was insufficient evidence introduced to prove his control over the weapon. Covington argued that the evidence showed that defendant remained as a squatter in the apartment, and, therefore, was in control of the apartment. We affirmed the judgment of conviction in *People v. Covington* (1981), 92 Ill. App. 3d 598, 416 N.E.2d 61.

■■ On appeal, defendant argues, among other things, that the State failed to prove that he controlled the apartment, and, therefore, failed to prove constructive possession of the heroin. At trial, both defendant and Cov-

ington testified that defendant did not reside at 258 Dooley Drive. The position argued on behalf of defendant, although inconsistent with the position taken in Covington's appeal, is consistent with defendant's trial testimony. The argument made on appeal is based on the trial record, and we find no prejudice to defendant as a result of the appellate defender's prior representation of Covington. In addition, we note that the *Covington* decision had been filed prior to the filing of the motion to withdraw by the State Appellate Defender. We conclude, therefore, that our previous ruling denying the State Appellate Defender leave to withdraw was correct.

Second, defendant contends that there was insufficient evidence introduced to prove beyond a reasonable doubt that he was in possession of the heroin.

● 2, 3  In order to support a conviction for unlawful possession of a controlled substance, such as heroin, the State must prove beyond a reasonable doubt that the defendant had knowledge of the controlled substance and that the controlled substance was in the immediate and exclusive control of the defendant. (*People v. Howard* (1975), 29 Ill. App. 3d 387, 330 N.E.2d 262.) Possession may be established by evidence of actual physical possession or constructive possession. Because of the difficulty of proving knowledge of the presence of drugs, evidence showing that the defendant had control over the premises where the drugs were found gives rise to an inference of knowledge and possession of the drugs. (*People v. Hester* (1980), 87 Ill. App. 3d 50, 409 N.E.2d 106.) Such an inference " 'may be sufficient to sustain a conviction for unlawful possession of narcotics *absent other facts and circumstances which might leave in the mind of [the trier of fact] a reasonable doubt as to his guilt.'* " *People v. Faulkner* (1967), 83 Ill. App. 2d 54, 57, 226 N.E.2d 467, 468.

■■ The State theorizes that defendant reached inside the closet and placed the heroin on the shelf in an attempt to conceal it. A conviction cannot be allowed to stand, however, on mere conjecture or speculation as to how the narcotics arrived at where they were found. (*People v. Stewart* (1975), 27 Ill. App. 3d 520, 327 N.E.2d 287.) There was no direct proof that the heroin was in the actual physical possession of defendant. No witness saw anything in defendant's hands when he walked to the closet. Defendant's testimony that he reached inside the closet in order to get his coat was not refuted at trial. The issue is whether the evidence was sufficient to prove that defendant had such control of the premises where the heroin was discovered so as to raise an inference of guilty knowledge and possession on the part of defendant.

■■ At trial, Officer Albrecht testified that defendant stated he had been living in the apartment at 258 Dooley Drive for about two weeks. Defendant denied making this statement and testified that he lived with

Crouder and her child. The defense witnesses supported defendant's explanation that he went to the apartment in order to move his mother's furniture; the reason defendant was at the apartment was not refuted at trial. There were no towels, bed linen or toiletries found at the apartment. The only items of clothing were discovered wadded up in a box on the second floor. The State argues that the unopened envelope addressed to defendant at 258 Dooley Drive which was found on the coffee table suggested that defendant was living at the apartment. Defendant testified that he had not seen the envelope prior to trial. The fact that on December 14, 1979, the date of the arrest, the envelope postmarked November 30, 1979, had not been opened refutes the State's argument. Finally, the evidence showed that the apartment was accessible to other persons. It was undisputed that entry to the apartment could be gained by reaching through a broken window next to the rear door. Viewing the evidence in its entirety, we conclude that other facts and circumstances were present in this case which cast doubt on the control over the premises exerted by defendant. Therefore, we hold that the evidence was insufficient to establish beyond a reasonable doubt the defendant's guilt of possession of the heroin.

The judgment of the Circuit Court of Madison County is therefore reversed.

Reversed.

KASSERMAN and HARRISON, JJ., concur.