THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS D. HERRON, Defendant-Appellant.

Second District   No. 2—89—0204

Opinion filed September 11, 1991.

G. Joseph Weller and Ingrid L. Moller, both of State Appellate Defender's Office, of Elgin, for appellant.

Charles R. Hartman, State's Attorney, of Freeport (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

The defendant, Thomas Herron, was charged by information with unlawful possession with intent to deliver a controlled substance (cocaine) (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(b)(2)) and unlawful possession of cannabis (Ill. Rev. Stat. 1987, ch. 56½, par. 704(a)). The jury in the case was instructed that, in addition to the above offenses, defendant was also charged with unlawful possession of a controlled substance (cocaine) (Ill. Rev. Stat. 1987, ch. 56½, par. 1402(b)). The jury then found defendant guilty of all three offenses. The finding of guilty for the offense of unlawful possession of a controlled substance was subsequently set aside as a lesser included offense of unlawful possession with intent to deliver. The trial court sentenced defendant to a four-year term of imprisonment, plus a $500 fine and a $135 street-value fine (Ill. Rev. Stat. 1987, ch. 38, par. 1005—9—1.1) for unlawful possession with intent to deliver, and a $50 fine and a $7 street-value fine for unlawful possession of cannabis.

On appeal, defendant raises the following issues: (1) whether constructive possession of a controlled substance was established beyond a reasonable doubt; (2) whether the trial court erred when it denied defendant's motion to compel the State to disclose a confidential informant; (3) whether the trial court erred when it denied defendant's motion for an evidentiary suppression hearing pursuant to *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674; (4) whether the trial court erred when it allowed certain exhibits to go to the jury; (5) whether defendant was denied a fair trial due to the improper admission of evidence of other crimes; and (6) whether defendant's conviction of unlawful possession of cannabis should be reversed because the State's expert on cannabis lacked the necessary qualifications to give his opinion. We affirm.

The information by which defendant was charged was based on evidence obtained as the result of a search of the residence at 725 South Kenwood in Freeport, Illinois, which was made pursuant to a search warrant dated December 19, 1987. Initially, defendant and his wife, Shirley Herron, who was charged with the same crimes in case No. 88—CF—30, were represented by the same privately retained counsel. Subsequently, however, a public defender was appointed to represent defendant. On October 7, 1988, the court heard motions by

both defendants for an evidentiary suppression hearing pursuant to *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674. In support of the motion, several affidavits obtained from both defendants, as well as from Shirley Herron's children, were presented, stating in pertinent part that on the day when a purchase of cocaine had allegedly taken place, no member of the household admitted anyone to the home who then purchased cocaine. The court denied the *Franks* motion with regard to both defendants. The trial court then granted the State's motion for a joinder of the trials.

Prior to jury selection, defendant moved to have the identity of the informant disclosed, said informant having provided probable cause for a search warrant to search the premises at 725 South Kenwood. In support of his motion, defendant asserted that the informant's identity would be crucial to his defense since the informant's testimony would establish that defendant was not present during the transaction on which the search warrant was based. The trial judge denied defendant's motion. At trial, Officer Michael Hannan of the Freeport police department testified for the State. During the course of his testimony, reference was made to statements which both defendants had made to him during the search of the residence and afterwards at the police station and which had not been disclosed by the State during discovery. After a hearing on that discovery violation, the trial court declared a mistrial.

On January 10, 1989, the State moved to sever the trials of the defendants, and the court proceeded to jury selection for the trial of defendant, Thomas Herron. The first witness to testify on behalf of the State was again Officer Hannan, who was the evidence officer on the evening of December 19, 1987. Hannan testified that Shirley Herron opened the door to let the police in. After the police commenced their search of the premises, they found defendant asleep in an upstairs bedroom. Hannan found a "Fashion Bug" shopping bag in the kitchen, which contained a small shaving bag. Inside the shaving bag, Hannan found two butter tubs. One of the butter tubs contained wire ties, and the other contained corners cut from plastic sandwich bags. There was also a box of sandwich bags within the shopping bag as well as a small scale, a small grinder, and a toothbrush. In the living room Hannan found a makeup bag containing two 35-millimeter film canisters and a small tube of lipstick. One of the film canisters held 14 small plastic baggies cut from sandwich bags, each filled with a small amount of white powder substance and tied with a wire tie. The other canister contained four slightly larger plastic bags with a white powder substance. All were later shown to contain cocaine.

Officer Hannan also collected items located by other officers from the second floor of the house. Items found in the bedroom in which defendant was found sleeping included two small packages, one plastic and one paper, containing a small amount of plant-type substance, which were found atop the headboard of the water bed. Hannan also picked up a small plastic bag, identified as exhibit No. 6, which was closed with a wire tie and contained a small amount of a white powder substance. On top of the headboard, Hannan also found a water glass containing a larger plastic baggie with a white powder substance, a wooden pipe, a small metal pipe, a money clip, cigarette lighter flints and some razor blades. Other items found within the headboard included two revolvers and personal papers belonging to defendant and Shirley Herron. The papers confiscated by police included several utility bills in Shirley Herron's name, one loan application and one car registration in defendant's name, as well as some cigarette rolling papers and a note pad. The two revolvers, however, were not taken by the police until January 27, 1988, pursuant to a second search warrant. Defendant's car keys were also located on top of the headboard. Police also located various smoking devices on a television stand in the bedroom as well as $600 inside of a pillow case on the bed. Some currency was also found in Shirley Herron's purse.

During cross-examination, defense counsel attempted to bring out the background involved in obtaining the search warrant. The State objected to this line of questioning since it was not explored on direct examination. After Officer Hannan testified on redirect as to his belief that the residence he was searching was that of both defendant and Shirley Herron, defense counsel again sought to inquire into the background of the search warrant and the name and address shown therein. The trial court again sustained the State's objection, holding that the inquiry went beyond the scope of the redirect examination.

Next, Officer Thomas Dyra testified that, immediately entering the residence, he went to the second floor, where he found defendant asleep in the master bedroom. Dyra noticed the several items within the bookcase headboard such as a gun and a number of small plastic bags, which he pointed out to Officer Hannan. Officer Dyra also went to the Herron residence on January 27, 1988, to execute the second search warrant. Later that day, Dyra took defendant's fingerprints as part of the arrest procedure and also elicited information regarding defendant's address and other personal data as part of the booking information. Defense counsel's objection to this line of questioning was overruled, and Dyra testified that defendant had told him his address was 725 South Kenwood.

Officer Ron Kramer testified that, in his capacity as an evidence officer for the Freeport police department, he transported all of the evidence obtained from the residence to the crime lab in Rockford and back in December 1987. Kramer stated that exhibit No. 6 was transported a second time in November 1988, which is the first time it was analyzed.

Officer Robert Smith testified as to the fingerprints which he took from the water glass found in the headboard during the December 19 search. Smith compared those prints to the prints taken from defendant at the time of his arrest and found 11 matching points of identification. Smith also collected some of the items of evidence found in the master bedroom and transported them to the police department. He inspected both walk-in closets in the master bedroom and stated that one contained women's clothing while the other held clothing items belonging to an adult male. Officer Smith further testified that the only evidence of illegality found inside of the water glass, exhibit No. 5, was the smoking devices. The State then asked Smith to enumerate the items found inside of exhibit No. 5. Defense counsel objected to this line of questioning, stating that it would reveal other crimes than those with which the defendant was charged and would therefore be prejudicial. The trial court overruled the objection, finding that the matter of smoking devices was relevant to the possession of cannabis charge. Finally, James O'Connor, a forensic scientist with the Illinois State Police, testified. O'Connor tested and analyzed the evidence he received from Officer Kramer. O'Connor described the chemical tests which he performed and the results which he obtained as to the different exhibits. O'Connor identified the plant material in exhibit Nos. 1 and 2 as cannabis. Exhibit No. 3 was shown to contain 1.1 grams of cocaine. Exhibit No. 4 contained 3.0 grams of cocaine. The scale which constituted exhibit No. 7 had traces of cocaine on it, and exhibit No. 6 contained less than 0.1 grams of cocaine. Exhibit No. 8, which was the larger plastic bag containing a white powder substance, did not contain any controlled substance; it consisted entirely of sodium bicarbonate (baking soda).

Defendant called the State's informant, John Doe, as his first witness. The informant did not appear. Defense counsel then made an offer of proof that if the informant were to testify, he would corroborate the information set forth in the complaint which led to the search warrant and further testify that defendant was not present during that transaction.

Edmond Ellis, a brother of the defendant, stated that, at some time during 1987, defendant often spent three or four days at his (Ed-

mond's) house and that Shirley Herron and defendant were not getting along during that time. Grant Harlan Harrell, a half-brother of defendant, testified that during November and December 1987 defendant lived with him three to four days a week because of personal problems between defendant and his wife.

Charles Ellis, another brother of defendant, testified that at 11 p.m. on December 18, 1987, he, his girlfriend, his cousin and his cousin's girlfriend had come to Freeport from Chicago. They met defendant and his wife at Harrell's Tap and had a few drinks together. From there everybody, including defendant, went to a bar called the Silver Knight until roughly 1:30 a.m. on December 19, and from there they went to Grant Harlan Harrell's house to play cards. At about 2 a.m. Charles asked Shirley Herron if the four of them could spend the night at her house, and, after receiving permission, they went there. Defendant and Shirley Herron stayed behind. Charles and his girlfriend stayed in the guest bedroom on the second floor, while his cousin and his girlfriend stayed in the master bedroom. Charles stated that he smelled "reefer smoke" coming from the room in which his cousin was staying. Charles opened the door and saw the couple smoking marijuana and also observed a small mirror with some substance which he thought to be cocaine. Charles informed the couple that Shirley did not allow drug use in her house. The foursome got up about noon that day, December 19, and left to return to Chicago at 2 p.m. Neither defendant nor Shirley Herron had returned to the house by then. Charles Ellis had not seen any of the items in evidence in the residence at 725 South Kenwood that day.

Defendant testified on his own behalf. Defendant stated that he did not possess either cocaine or marijuana on December 19, 1987. During the summer of 1987, he had been under an order of protection not to live at the residence of his wife, and therefore he had lived with his brothers, Edmond and Grant. Defendant characterized the relationship between Shirley and himself as "very bad." On December 18 defendant and Shirley met at his father's tavern, and they left there in the company of his brother Charles and his cousin with their respective girlfriends at about 12:30 a.m. the next morning to go to the Silver Knight. The whole group left the Silver Knight at approximately 1:30 a.m. and went to Grant's house to play cards. After Charles, his cousin, and their girlfriends left to go to the residence at 725 South Kenwood for the night, defendant and Shirley remained behind until noon on December 19. From there, defendant, his wife and his brother William went back to his father's tavern. At about 4 p.m.

on December 19, defendant and Shirley arrived back at the residence, whereupon defendant went straight to bed.

Defendant denied ownership of any of the drug-related items introduced into evidence. He further testified that some of the smoking devices may have belonged to his wife, as she collected pipes. Defendant stated that the $600 found in the pillow case were the proceeds of a loan which he had obtained to purchase Christmas presents and, as was his custom, he had put the money in his pillow case before he went to sleep. Defendant admitted to owning the guns found on the premises. Defendant stated that he had signed the affidavit submitted in support of the *Franks* motion stating that he resided at 725 South Kenwood at the behest of his previous attorney, who initially represented both defendant and his wife, in the belief that he would be helping his wife, but that he had used his wife's address as a mailing address since he did not know where he would be staying from day to day. The State then questioned defendant with regard to a pad of paper found in the bedroom. The paper contained some numbers as well as a list of names with corresponding dollar amounts. Defendant denied all knowledge of these names and numbers. With regard to the protection order, the State established that the one introduced by defendant had expired in June 1987. The State next introduced evidence that defendant was in violation of another, more recently entered, order of protection.

Officer James Teasdale testified as a rebuttal witness for the State. Teasdale testified that in April 1988 he was called to 725 South Kenwood, as he was on other occasions during 1988, in order to settle domestic disputes. On November 14, 1988, he went there to help defendant remove his belongings.

The jury was instructed that defendant was charged with one count each of unlawful possession with intent to deliver a controlled substance (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(b)(2)), unlawful possession of a controlled substance (Ill. Rev. Stat. 1987, ch. 56½, par. 1402(b)), and unlawful possession of cannabis (Ill. Rev. Stat. 1987, ch. 56½, par. 704(a)). The jury returned guilty verdicts on all three counts. The finding of guilty for the offense of unlawful possession of a controlled substance was subsequently vacated as a lesser included offense. Defendant's motion for a new trial was denied by the trial court.

During the sentencing hearing, the State presented the testimony of Officer Kramer with regard to the street value of the substances involved. Kramer testified that the street value of the cannabis was approximately $7 or $8 and that the street value of the cocaine was

approximately $135. The court subsequently sentenced defendant to a term of four years' imprisonment for the possession with intent to deliver a controlled substance, plus a fine of $500 and a street-value fine of $135. As to possession of cannabis, the court assessed a fine of $50 plus a street-value fine of $7. Defendant filed his timely notice of appeal.

We first address defendant's contention that the State failed to establish constructive possession of a controlled substance beyond a reasonable doubt. Specifically, defendant argues that the evidence established that, at the time of the execution of the search warrant, defendant did not permanently reside with his wife due to marital strife, but, rather, had been staying at the homes of several relatives. Defendant maintains that it is therefore more likely that his wife, Shirley Herron, from whom the purchase which led to the search warrant had been made, had exclusive and immediate control over the cocaine. We note at the outset that defendant concedes in his brief that the evidence could support a finding by the jury that the 0.1 grams of cocaine and 2.5 grams of cannabis found in the master bedroom were within an area over which he could have exercised control. It is in regard to the 18 baggies of cocaine found in the living room that defendant raises the constructive possession issue.

■ Illinois law on unlawful possession and the doctrine of constructive possession is well settled. The court in *People v. Scott* (1987), 152 Ill. App. 3d 868, stated the guiding principles as follows:

> "To support a conviction for the unlawful possession of a controlled substance, the State must prove beyond a reasonable doubt that defendant had knowledge of the controlled substance and that it was in his immediate and exclusive control. (*E.g., People v. Burke* (1985), 136 Ill. App. 3d 593, 599, 483 N.E.2d 674, 679; *People v. Jones* (1982), 105 Ill. App. 3d 1143, 1148, 435 N.E.2d 823, 826.) Possession may be established by evidence of actual physical possession or constructive possession. (*E.g., People v. Jones* (1982), 105 Ill. App. 3d 1143, 1148, 435 N.E.2d 823, 826.) Actual possession is proved by testimony which shows defendant exercised some form of dominion over the unlawful substance, such as trying to conceal it or throwing it away. (*People v. Howard* (1975), 29 Ill. App. 3d 387, 389, 330 N.E.2d 262, 264.) Constructive possession exists without actual personal present dominion over the controlled substance but with an intent and capability to maintain control and dominion over it. (*People v. Valentin* (1985), 135 Ill. App. 3d 22, 31, 480 N.E.2d 1351, 1358.) As a result, narcotics being found on the

premises under the control of defendant gives rise to an inference of knowledge and possession by him which alone may be sufficient to sustain a conviction for unlawful possession of controlled substances. (*People v. Nettles* (1961), 23 Ill. 2d 306, 308-09, 178 N.E.2d 361, 363, *cert. denied* (1962), 369 U.S. 853, 8 L. Ed. 2d 12, 82 S. Ct. 939; *People v. Jones* (1982), 105 Ill. App. 3d 1143, 1148, 435 N.E.2d 823, 826.) Mere access by other persons to the area where drugs are found is insufficient to defeat a charge of constructive possession. (*People v. Rush-Bey* (1987), 152 Ill. App. 3d 17, 23.) Moreover, exclusive possession does not mean that possession may not be joint. (*People v. Embry* (1960), 20 Ill. 2d 331, 335-36, 169 N.E.2d 767, 769; *People v. Burke* (1985), 136 Ill. App. 3d 593, 599, 483 N.E.2d 674, 679.) If two or more people share immediate and exclusive control or share the intention and power to exercise control, then each has possession. *People v. Valentin* (1985), 135 Ill. App. 3d 22, 32, 480 N.E.2d 1351, 1358." *People v. Scott* (1987), 152 Ill. App. 3d 868, 870-71.

With these principles in mind, we conclude that defendant's constructive possession of cocaine was in fact proved beyond a reasonable doubt. As to defendant's contention that he did not reside at 725 South Kenwood at the time of the search, we agree with the State that much of defendant's evidence in this regard was discredited. First, defendant was present at that address when the search warrant was executed on December 19 and on a later date when a second warrant was executed. Moreover, defendant gave the subject premises as his address at the time he was arrested and was also later impeached by his own affidavit (exhibit No. 27) in which he asserted, contrary to his trial testimony, that he lived at 725 South Kenwood. Additionally, mailings sent to defendant were shown to have been forwarded to 725 South Kenwood. There were also two closets in the upstairs master bedroom at 725 South Kenwood; one of them contained clothing and accessories for an adult male.

The State also correctly points out that the testimony of defendant's witnesses was of limited value to establish that he did not reside at 725 South Kenwood. Edmond Ellis could not state with any certainty exactly when defendant had stayed with him. Although Grant Harrell testified that defendant stayed with him three or four days a week, he admitted on cross-examination that he had no way of knowing whether defendant lived with his wife on the other nights of the week. Even if we were to conclude that defendant did not permanently reside at 725 South Kenwood, such a finding would not neces-

sarily be cause for reversal. Both the Illinois Supreme Court and this court have on more than one occasion stated that a person may be found to be in possession of drugs discovered in homes in which he or she lived only part time and the mere fact that a person may have periodically lived elsewhere does not critically impeach the evidence of possession. *People v. Galloway* (1963), 28 Ill. 2d 355, 358-60; *People v. Romero* (1989), 189 Ill. App. 3d 749, 755; *People v. Birge* (1985), 137 Ill. App. 3d 781, 791.

■ Defendant also attempts to support his constructive possession argument by asserting that the State failed to connect him to the drugs. Defendant notes that the packets of cocaine found on the first floor were stored in a makeup bag with a tube of lipstick, which defendant states is an item that he is unlikely to use. We note, however, that contained in a "Fashion Bug" shopping bag found in the kitchen was a shaving kit, an item defendant would in fact be more likely to use. Inside of the shaving kit police found butter tubs containing wire ties and corners cut from plastic sandwich bags, along with a scale and a grinder. In addition, when police executed the search warrant, they found defendant nude and asleep in the upstairs master bedroom. In the headboard of the bed police found two guns, a small bag containing cocaine, a glass containing razors, smoking pipes, flints, and a clip that could have been a "roach" clip, two small packages containing cannabis, a set of defendant's car keys, and a wallet containing defendant's identification. On a television stand within the room, police found paraphernalia for smoking marijuana. The fact that drugs and related paraphernalia are located in places where a defendant could or should have been aware of their presence and existence is further evidence of knowledge and control. *People v. Scott* (1987), 152 Ill. App. 3d 868, 872.

In cases such as this, possession and knowledge are questions of fact to be resolved by the jury, and a criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Rentsch* (1988), 167 Ill. App. 3d 368, 371.) In reviewing the sufficiency of the evidence, the relevant inquiry is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. (*Rentsch*, 167 Ill. App. 3d at 371.) Based on all of the above, we conclude that the jury could have found beyond a reasonable doubt that defendant unlawfully possessed, albeit constructively, a controlled substance containing cocaine with the intent to deliver it.

Defendant next contends that the trial court erred when it denied defendant's motion to compel the State to disclose the identity of the confidential informant. Defendant argues that the informant would have been a material witness with knowledge of the location of the controlled substances as well as with regard to the fact that defendant was not a party to the previous controlled drug purchase. The State responds that the informant was not a material witness because he was present only at the previous controlled drug buy and was not present or involved in the search and arrest of defendant on December 19, 1987.

The circumstances whereby disclosure of an unidentified informant is required are noted in Supreme Court Rule 412(j)(ii), which provides:

> "*Informants.* Disclosure of an informant's identity shall not be required where his identity is a prosecution secret and a failure to disclose will not infringe the constitutional rights of the accused. Disclosure shall not be denied hereunder of the identity of witnesses to be produced at a hearing or trial." (134 Ill. 2d R. 412(j)(ii).)

Our supreme court, in *People v. Lewis* (1974), 57 Ill. 2d 232, 235, has adopted a standard whereby disclosure would be required when an informant acted in the dual role of an informant-participant. (*Roviaro v. United States* (1957), 353 U.S. 53, 64-65, 1 L. Ed. 2d 639, 647, 77 S. Ct. 623, 630.) Where an informant's knowledge is potentially significant on the issue of the defendant's guilt or innocence, the defendant is prejudiced by the State's denial of production. (See *People v. Perez* (1974), 25 Ill. App. 3d 371, 377.) On the other hand, where the unnamed informant was neither a participant nor a material witness to the essential elements of the offense, the informant is not a crucial witness and his identity can be withheld. (See *People v. Chaney* (1976), 63 Ill. 2d 216, 223-26.) In deciding whether to require disclosure, a court must balance the public's interest in protecting the flow of information against the defendant's right to prepare his defense. (*People v. Gaytan* (1989), 186 Ill. App. 3d 919, 923.) In Illinois, the factors considered by courts under this balancing test are whether the requests for disclosure related to the fundamental question of guilt or innocence rather than to the preliminary issue of probable cause; whether the informant played an active role in the criminal occurrence as opposed to being a mere tipster; and whether it has been shown that the informant's life or safety would likely be jeopardized by disclosure of his identity. See *People v. Raess* (1986), 146 Ill. App. 3d 384, 390-91 (and cases cited therein).

██ The instant case involves an informant who participated in the purchase of a controlled substance and whose statements thereafter provided probable cause for a warrant to search the premises on which the purchase occurred. Defendant is charged only with offenses related to evidence revealed in that search and faces no charges with respect to the original drug purchase. The informant was not present during the search or during the arrest of defendant. The informant thus played no material role as a participant in defendant's possession of any controlled substance, and we do not believe that he could have provided any testimony concerning the charged offenses.

The circumstances of this case are thus similar to *People v. Stewart* (1978), 67 Ill. App. 3d 443. In *Stewart,* police were able to obtain a search warrant, based upon information supplied by an informant, for an apartment in Peoria County, Illinois. A search of the apartment revealed a substance containing heroin, and defendants Hoskin and Stewart were subsequently indicted for unlawful possession of a controlled substance. One of the defendants thereafter filed a motion to compel disclosure of the confidential informant, alleging that there was no allegation by the informant that the defendant was present at the premises during the informant's visit and that the informant's testimony was therefore relevant and material to the issue of constructive possession by the defendant. The trial court found that, because the issue of the guilt of defendant Stewart at trial would depend upon construction possession, the informant might be able to give evidence concerning whose possession the substance was in when he did the observing or at some other time when he had an opportunity to observe. The court therefore ordered the State to produce the informant. When the State refused, the court dismissed the case. The appellate court in *Stewart* reversed, finding the factual situation similar to that in *People v. Mack* (1957), 12 Ill. 2d 151, wherein the Illinois Supreme Court held that disclosure was not required. The court noted that in *Mack* the informer took no part in serving the search warrant or in the defendant's arrest; the record did not show that the informant either participated in the crime or helped set up its commission; and no part of the informant's communications to police was used as evidence in the case. The court then stated that its decision was controlled by *Mack* and concluded that the trial court erred in requiring the State to reveal its informant. *Stewart,* 67 Ill. App. 3d at 446.

We conclude that the informant in the present case was not a material witness to anything that transpired on December 19, 1987. The informant merely provided information regarding an illegal incident

occurring within 48 hours prior to the date of the search, for which defendant has not been charged. Although that information formed the basis for the search warrant executed on December 19, that fact does not make the informant a material witness to the crimes committed on that date. (See *People v. Deveaux* (1990), 204 Ill. App. 3d 392, 399.) The burden was on defendant to show that disclosure of the informant's identity was necessary to prepare his defense. (*People v. Hodges* (1987), 159 Ill. App. 3d 38, 41.) As there was no evidence that the informant participated in the crime for which defendant was charged and was not present when defendant was arrested, we conclude that no such showing was made. We find further support for this conclusion by noting that exclusive possession does not mean that possession may not be joint (*People v. Scott*, 152 Ill. App. 3d at 871), thus negating defendant's argument that his credibility would have "greatly been underscored" on the constructive possession issue.

■ Next, defendant contends that the case must be remanded for an evidentiary suppression hearing pursuant to *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, because defendant made a substantial preliminary showing that the affidavits signed by Officer Michael Hannan and the informant, John Doe, in support of the search warrant were made in reckless disregard for the truth. In his reply brief, however, defendant states that, upon further consideration, he withdraws this argument. Since one may expressly withdraw or eliminate an argument on appeal even after briefs are filed or the case has been argued (*In re Marriage of Spomer* (1984), 123 Ill. App. 3d 31, 33), we need not further address this issue.

Defendant also contends that the trial court erred when it allowed certain exhibits to go to the jury room during deliberations. Specifically, defendant argues that it was error to allow State's exhibit Nos. 26 and 27 to go to the jury. Exhibit No. 26 is the arrest/face sheet that includes such information as defendant's name, age and home address, which defendant listed as 725 South Kenwood. Exhibit No. 26 also contains defendant's signature. Exhibit No. 27 is an affidavit prepared by defendant's original attorney and signed by defendant, wherein defendant states, *inter alia*, that he resides at 725 South Kenwood and that he resided there on December 17, 1987, through December 19, 1987.

■ As to exhibit No. 27, defendant asserts that it was improper to let the prior inconsistent statement go to the jury for deliberations and cites *People v. Carr* (1977), 53 Ill. App. 3d 492, in support of his argument. In *Carr*, it was found that the trial court committed re-

versible error by allowing certain statements to go to the jury room. The statements objected to in *Carr* were prior inconsistent statements of two State witnesses which may not have been admitted into evidence and which were sent to the jury without adequate instructions that they were not to be considered as substantive evidence. (*Carr*, 53 Ill. App. 3d at 497-99; see *People v. Johnson* (1986), 150 Ill. App. 3d 1075, 1091; see also *People v. Clearlee* (1981), 101 Ill. App. 3d 16, 19.) Here, defendant's affidavit was in fact admitted into evidence, and the jury was given the requisite pattern jury instruction, both orally and in writing, concerning limitations on the use of prior inconsistent statements. (Illinois Pattern Jury Instructions, Criminal, No. 3.11 (2d ed. 1981).) We also note that defendant did not tender a more specific instruction, nor did he request that the jury be specifically admonished as to the limitation when the affidavit was introduced.

As to exhibit No. 26, defendant's primary contention is that when the trial court allowed the exhibit to go to the jury, after initially ruling to the contrary, the court was not properly exercising its discretion. As the State points out, defendant does not contend that the document contained any objectionable matter, but rather contends that the document would be "over emphasized" by the jury. Defendant cites no authority in support of this argument, however, and we find it to be without merit.

The decision to submit exhibits to the jury is within the sound discretion of the trial court, whose decision will not be reversed absent an abuse of discretion. (*People v. Robinson* (1984), 125 Ill. App. 3d 1077, 1079.) Based on the facts of this case, including the fact that both exhibits were testified to at trial and the fact that other evidence tending to show that defendant resided at 725 South Kenwood was presented, we conclude that the trial court did not abuse its discretion in allowing exhibit Nos. 26 and 27 to go to the jury during deliberations. In addition, we note that the exhibits may also be considered admissions by defendant and therefore admissible. An admission is a statement from which guilt may be inferred, when taken in connection with other facts, but from which guilt does not necessarily follow. (*People v. Rogers* (1989), 178 Ill. App. 3d 650, 657.) Stated another way, exhibit Nos. 26 and 27 are admissions from which defendant's actual residence, a factual issue in this case, could be inferred. In any event, we find no trial court error in the submission of these exhibits to the jury.

Defendant's final contentions on appeal are that he was denied a fair trial due to the improper admission of other crimes and

that his conviction of unlawful possession of cannabis should be reversed because the State's purported expert was not qualified to give his opinion. Specifically, defendant asserts that he was prejudiced by the prosecutor's cross-examination of defendant which suggested that he was a large-scale drug dealer; by the testimony of Officer Smith that the possession of smoking devices was an offense; and by the rebuttal testimony of Officer Teasdale and statements of the prosecutor that defendant had violated court orders of protection. Furthermore, defendant asserts that James O'Connor, a forensic scientist specializing in drug chemistry with the Illinois State Police, was not qualified to render expert testimony on cannabis because his specialty was chemistry and not botany. Upon reviewing the record, we find that defendant has waived review of these alleged errors by his failure to raise them with specificity in his post-trial motion. Both an objection at trial and a written post-trial motion raising the issues are required for alleged errors that could have been raised during trial. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186; *People v. Surles* (1984), 126 Ill. App. 3d 216, 225.) Since we further conclude that the plain error doctrine, which may be invoked in cases where the evidence is closely balanced or where the error was of such magnitude that the accused was denied a fair trial, is inapplicable under the facts of this case (*Enoch*, 122 Ill. 2d at 199; *Surles*, 126 Ill. App. 3d at 225), we need not depart from the general waiver rule.

For all the foregoing reasons, the judgment of the circuit court of Stephenson County finding defendant guilty of unlawful possession with intent to deliver cocaine and unlawful possession of cannabis and imposing a term of imprisonment plus various fines is affirmed.

Affirmed.

GEIGER and INGLIS, JJ., concur.