FIFTH DIVISION

July 16, 1999

No. 1-98-0464

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. ) No. 96 CR 31629

)

) Honorable

NELSON HODOGBEY, ) 
Joseph G. 

) 
Kazmierski
, 
Jr.,

Defendant-Appellant. ) Judge Presiding.

PRESIDING JUSTICE HOURIHANE
 delivered the opinion of the court:
 Following a jury trial, defendant Nelson Hodogbey was found guilty of possession of a controlled substance (heroin) with intent to deliver and subsequently sentenced to a 10-year prison term.  On appeal, defendant contends (1) that the evidence introduced against him was insufficient to establish his knowledge that the package he accepted contained heroin, (2) that a proper chain-of-custody was not established by the State sufficient to justify the admission of the heroin at trial and (3) that the closing arguments of the State operated to deny him a fair trial.

For the reasons that follow, we reverse.

BACKGROUND

Defendant was arrested on October 25, 1996 and subsequently charged with possession of a controlled substance (heroin) with intent to deliver pursuant to section 401(a)(1)(B) of the Illinois Controlled Substances Act (Act)(720 ILCS 570/401(a)(1)(B)(West 1996)).

At trial, special agent Sean Michael Sears testified that he was contacted on October 22, 1996, by a fellow member of the United Stated Drug Enforcement Administration stationed in London.  He was told that English Customs had seized a quantity of heroin destined for Chicago.  The heroin was contained in a package sent from Thailand.  Arrangements were made for the transfer of the package to Chicago.

The package arrived on October 24, 1996.  According to special agent Sears, the package was a "basic brown corrugated cardboard box," two to three feet long and approximately a foot-

and-a-half wide.  Among the numerous marks affixed to the package was an address label.  That label directed the package to defendant.  That label further indicated that the package had been sent from Bangkok, Thailand.  Special agent Sears opened the package and found a "white powdery substance," which tested positive for heroin.  There were also several pairs of leggings packed in plastic inside the package, along with a handwritten note, which read, "Dear Nelson, please here 12 pieces of legettes.  I want see if you can sell quick and good price.  Then next time I would send three dozen.  Thank you and bye.  Yours, Brown."

The following morning special agent Sears contacted Brian Hugh, a United States postal inspector who was to convey the package to defendant as part of a controlled delivery.

Chicago police officer Edward Mizera testified that, on October 25, 1996, he and several other officers began surveillance of the apartment building at 5250 North Sheridan Road at approximately 11:30 in the morning.  Around that time, Inspector Hugh entered the apartment building with the package.  Inspector Hugh was dressed as a mailman.  A few minutes later, Inspector Hugh left the building and radioed a physical description of defendant.  Inspector Hugh also confirmed that the package had been delivered and accepted.

Officer Mizera then observed defendant walk from the apartment building to the sidewalk where he looked both ways down the street before returning inside.

Approximately five minutes later, defendant and another individual left the apartment building and began walking down Sheridan Road.  Neither was carrying the package.  Officer Mizera and several other officers stopped them on the sidewalk.  Defendant was shown a search warrant for his apartment.  With keys given to him by defendant, officer Mizera entered the apartment and there saw the unopened package sitting in the center of the living room.  Defendant was then arrested.

Officer Mizera also stated that the heroin seized from the package had a street value of between $75,000 and $80,000.  To officer Mizera, that indicated a "high[-]level narcotics seller."

Inspector Hugh also testified.  He stated that he proceeded to 5250 North Sheridan Road on the morning of October 25, 1996.  According to Inspector Hugh, he entered the apartment building at approximately 12:15 in the afternoon and knocked on the front door of apartment 107.  A voice inside that apartment asked who was there.  Inspector Hugh replied, "Mailman."  The door then opened and defendant stepped out, closing the door behind him.  Inspector Hugh asked defendant if he was Nelson Hodogbey.  Defendant said he was.  Inspector Hugh asked defendant if he was expecting a package.  Defendant asked where the package was from.  Inspector Hugh pointed to the return address, whereupon defendant said, "Thailand."  Inspector Hugh then asked defendant if the package was his.  Defendant said it was.  Defendant then accepted the package and took it inside his apartment.  As he walked out of the apartment building, Inspector Hugh heard a door open and then saw defendant walk out of his apartment.  Inspector Hugh radioed those officers conducting surveillance that the individual walking out of the apartment building behind him was the individual who had accepted the package.

James Brady, a Cook County State's Attorney investigator, testified that, on October 25, 1996, he was a sergeant with the Chicago police department and assisted in the controlled delivery.  Brady witnessed defendant follow Inspector Hugh out of the apartment building after accepting the package, return and then leave his apartment again with another individual.

Forensic scientist Stevan Sarac testified that he examined the white powder found within the package delivered to defendant.  It was, in his opinion, 111.38 grams of a substance containing heroin.  Also testifying with regard to that substance was Peggy Konrath, another forensic scientist.  She stated she tested the substance and determined that it was 87% pure.

With that, the State rested.

Defendant moved for a directed verdict.  That motion, however, was denied, after which defendant put on his defense.

Defendant began with his own testimony.  He stated that he was a student at Washington College and lived in an apartment at 5250 North Sheridan Road.  On the morning of October 25, 1996, he and a friend, Emanuel, were watching a movie in his apartment when he heard a knock on his front door.  It was a mailman with a package.  The mailman asked defendant if he was Nelson Hodogbey.  Defendant said he was.  When defendant asked where the package was from, the mailman pointed to the return address.  Defendant testified he was surprised.  He had "never received a package from Thailand."  Defendant accepted the package, signing a receipt as he was told.

Defendant returned inside and placed the package on his living room floor.  He did not open the package.  Defendant then began to prepare to leave for a study group he was to attend at 12:30 in the afternoon.  Defendant did not recall if he followed the mailman out of the apartment building, but may have in order to check the weather.

Defendant further stated that he was arrested on the sidewalk alongside Sheridan Road soon after he left his apartment to catch a bus.  According to defendant, he was walking along with his friend when "five guys in plain clothes pull out a gun and say[,] ['F]reeze.[']"  He was asked for his keys, handcuffed and then escorted back to his apartment.

Defendant expressly denied that he had ever been involved in any drug dealing.

During cross-examination, defendant denied owning a car on the day on which he was arrested.  However, he was subsequently confronted with his key chain which contained keys for a Lexus.  Defendant was also confronted with an application he had completed in connection with the rental of his apartment as well as with another application, also in his name, for vehicle title and registration.  Each application listed a different Lexus automobile.  Defendant denied the latter application was his, stating he had "never seen [it] before."  Defendant also explained that although he "used to drive" a Lexus, that automobile was not his.  It belonged to a friend.

Rachel Carbonu also testified on behalf of defendant.  She stated that she, too, was a student at Washington College and also a member of the study group to which defendant belonged.  According to Carbonu, defendant was to meet the study group at 12:30 in the afternoon on October 25, 1996, but never did.

Officer Mizera was called in rebuttal.  He testified that defendant was never confronted at gun point on Sheridan Road.  Officer Mizera further stated that, following his arrest, defendant told him he was not expecting a package, but that he did have a friend in Bangkok.  Defendant, however, could not remember the name of that friend.

After hearing all the evidence and arguments of counsel, the jury found defendant guilty of possession of a controlled substance (heroin) with intent to deliver.  Defendant was thereafter sentenced to a 10-year prison term.

This appeal followed.

DISCUSSION

I.

Defendant initially contends the evidence introduced against him was insufficient to establish, beyond a reasonable doubt, that he 
knowingly
 possessed the heroin.

In addressing a challenge to the sufficiency of the evidence, a reviewing court is not to retry a defendant, but rather to determine, after viewing all the evidence in a light most favorable to the State, whether any rational trier of fact could have found that defendant guilty beyond a reasonable doubt.  
People v. Collins
, 106 Ill. 2d 237, 261, 478 N.E.2d 267 (1985).  Only when the evidence used to convict is so improbable, unsatisfactory or inconclusive will a conviction be set aside.  
Collins
, 106 Ill. 2d at 261; 
People v. Bybee
, 9 Ill. 2d 214, 221, 137 N.E.2d 251 (1956). 

In order the sustain a conviction for possession of a controlled substance with intent to deliver, the State must prove, beyond a reasonable doubt, that (1) defendant had knowledge of the presence of a controlled substance, (2) the controlled substance was in the immediate control and possession of defendant and (3) the amount of the controlled substance exceeded that which could be viewed as merely for personal use.  
People v. Witherspoon
, 216 Ill. App. 3d 323, 333, 576 N.E.2d 1030 (1991); 
People v. Salazar
, 211 Ill. App. 3d 899, 906, 570 N.E.2d 802 (1991); see 720 ILCS 570/401(a)(1)(B)(West 1996).

A defendant is deemed to have acted knowingly, or with knowledge, if it is shown he was aware of the existence of facts which make his conduct unlawful.  
People v. Gean
, 143 Ill. 2d 281, 288, 573 N.E.2d 818 (1991); 
People v. Weiss
, 263 Ill. App. 3d 725, 731, 635 N.E.2d 635 (1994).  However, knowledge, because it is not ordinarily susceptible to direct proof, is generally established through circumstantial evidence.  
Weiss
, 263 Ill. App. 3d at 731.  "Circumstantial evidence is indirect proof of the principal facts  of a case, which principal facts can only be inferred from one or more circumstances directly established."  
People v. Robinson
, 14 Ill. 2d 325, 331, 153 N.E.2d 65 (1958).  In the context of possession of a controlled substance with intent to deliver, then, knowledge on the part of a defendant may be established by evidence of his acts or conduct which allow the inference that he was aware of the presence of a controlled substance at the place of discovery.  
People v. Pintos
, 133 Ill. 2d 286, 292-93, 549 N.E.2d 344 (1983); 
People v. Nwosu
, 289 Ill. App. 3d 487, 494, 683 N.E.2d 148 (1997).

In 
Commonwealth v. Sterling
, 241 Pa. Super. 411, 361 A. 2d 799 (1976), United States Customs officials discovered "a large quantity of hashish" in a parcel addressed to "Mrs. Donald Farr" in care of defendant James Sterling.  361 A. 2d at 800.  A controlled delivery was subsequently conducted, after which a warrant authorizing a search of defendant's apartment was executed.  361 A. 2d at 800.  The parcel was discovered; it was unopened.  361 A. 2d at 801.  Defendant told the officers that although he suspected the parcel contained drugs, he was not certain, and had no intention of opening it.  361 A. 2d at 801.

Defendant was charged with possession of hashish with intent to deliver, and convicted.  361 A. 2d at 801.  On appeal, the superior court of Pennsylvania reversed defendant's conviction.  361 A. 2d at 802.  The superior court found that the Commonwealth failed to prove "[defendant] had discovered the contents of the package and that he intended to exercise control over the hashish."  361 A. 2d at 802.

In 
Commonwealth v. Rambo
, 488 Pa. Super. 334, 412 A. 2d 535 (1980), the superior court of Pennsylvania reaffirmed its decision in 
Sterling
.  There, United States Customs officials discovered several pounds of hashish in a package addressed to defendant Robert Rambo from his brother in Tangier, Morocco.  412 A. 2d at 536-37.  A controlled delivery was subsequently conducted, after which a warrant authorizing a search of defendant's apartment was executed.  412 A. 2d at 537.  The package was discovered and seized.  412 A. 2d at 537.  However, like the parcel in 
Sterling
, it was unopened.  412 A. 2d at 537.

Defendant was charged with possession of hashish with intent to deliver, and convicted.  412 A. 2d at 536.  On appeal, the superior court reversed defendant's conviction, finding that, just as in 
Sterling
, the evidence introduced against defendant could not reasonably establish his knowledge of the hashish beyond a reasonable doubt.  412 A. 2d at 538.

The underlying facts of this appeal are virtually indistinguishable from those of 
Sterling
 and 
Rambo
.  At trial, the evidence established that defendant accepted a package addressed to him.  Defendant did not open the package.  Neither did he hide the package within his apartment.  Rather, he left it, unopened, in the middle of his living room floor as he went about other business.  The evidence also established that defendant did not attempt to flee when the officers approached him on the street, nor did he otherwise resist them.  In fact, he gave the officers the keys to his apartment, as requested.

While it is true defendant left his apartment after receiving the package, looked up and down Sheridan Road and then returned inside, that evidence was also insufficient to prove his knowledge of the heroin beyond a reasonable doubt.  "[S]uspicious behavior in the vicinity of narcotics will not suffice as proof of knowledge as to their presence."  
People v. Boswell
, 19 Ill. App. 3d 619, 621, 312 N.E.2d 17 (1974); see 
People v. Ackerman
, 2 Ill. App. 3d 903, 905-06, 274 N.E.2d 125 (1971).

The State makes much of the possibility that the jury could well have concluded defendant was untruthful in his testimony.  Such an assertion, however, is misguided.

In 
People v. Weinstein
, 35 Ill. 2d 467, 220 N.E.2d 432 (1966), our supreme court stated as follows:

"It is a fundamental doctrine of our system of criminal jurisprudence that the law presumes the innocence of an accused until he is proved guilty beyond a reasonable doubt.  [Citations.]  The presumption is 'founded on the first principle of justice, and is intended, not to protect the guilty, but to prevent, so far as human agencies can, the conviction of an innocent person.'  [Citation.]  Equally basic is the rule of law that the burden is on the prosecution to prove beyond a reasonable doubt the commission of the crime charged and to establish by the same degree of proof the perpetration of the crime by the person accused; that is to say, the prosecution has the burden or proving beyond a reasonable doubt all the material and essential facts constituting the crime.  [Citations.]  The burden of proof never shifts to the accused, but remains the responsibility of the prosecution throughout the trial."  35 Ill. 2d at 470.

Because the burden of proof never shifts, a reasonable doubt is created by the insufficiency of the evidence introduced by the State.  
People v. Coulson
, 19 Ill. 2d 290, 296, 149 N.E.2d 96 (1958).  Indeed, "[i]f a conviction is to be sustained, it must rest on the strength of the State's case and not on the weakness of the defendant's case."  
Coulson
, 19 Ill. 2d at 296; 
People v. Gordon
, 204 Ill. App. 3d 123, 128, 561 N.E.2d 1164 (1990).

Here, the State failed to prove, beyond a reasonable doubt, that defendant knowingly possessed the heroin.  That the jury may have disbelieved the testimony of defendant will not excuse such a failure.  The State bore the burden of proving that defendant knowingly possessed the heroin.  It did not meet that burden.  Accordingly, defendant's conviction cannot stand.

II. 
and 
III.

In light of the foregoing, this court need not address the remaining contentions advanced by defendant on appeal.  
Coulson
, 19 Ill. 2d at 298; 
Boswell
, 19 Ill. App. 3d at 622; 
Ackerman
, 2 Ill. App. 3d at 906.

 
CONCLUSION

For the aforementioned reasons, we reverse defendant's conviction and sentence for possession of a controlled substance (heroin) with intent to deliver.

Reversed.

HARTMAN and GREIMAN, JJ., concur.