FIFTH DIVISION
August 3, 2007

No. 1-05-2174

THE PEOPLE OF THE STATE OF ILLINOIS,      )   Appeal from the
                                                 )   Circuit Court of
          Plaintiff-Appellee,         )   Cook County
                                                 )
v.                                               )
                                               )
RAMIRO SANCHEZ,                )   Honorable
                                               )   Marjorie Laws,
          Defendant-Appellant.      )   Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

A jury found defendant, Ramiro Sanchez, guilty of possession of a controlled substance with intent to deliver. Defendant was sentenced to 15 years in prison. One issue is raised on appeal: whether the State proved beyond a reasonable doubt that defendant knowingly possessed nearly five kilograms of cocaine.

BACKGROUND

The parties do not dispute the relevant facts. At trial, the evidence showed that police officers had established surveillance of a house after receiving information from a confidential informant. The informant proffered several pieces of information, including a description of a man named "Edgar" who recently received 200 kilograms of cocaine, the address of Edgar's house, and a description of a red SUV being used to transport the cocaine. During the surveillance of the house, police observed a man ("the middleman") approach the house at

approximately 6 p.m. on May 7, 2003. A man, matching Edgar's description, opened the door. The middleman stepped inside and emerged after about 10 minutes, carrying a white box. The box was sealed with duct tape. Written on the box were the words: "Coconut Juice." The middleman placed the box into the red SUV and drove away.

In an unmarked car, members of the surveillance team followed the middleman to a grocery store parking lot at 2140 North Western Avenue. The officers observed the middleman exit the SUV, talk on a cellular telephone, reenter the vehicle and talk on the telephone again. Within minutes, at about 6:30 p.m., a white Ford Thunderbird, driven by defendant, entered the parking lot. He positioned the Thunderbird such that the trunk of the car was backed up to the front of the red SUV. The trunk of the Thunderbird popped open, and defendant exited the car. Defendant's wife stayed inside the car.

The middleman handed the white box with duct tape to defendant. The middleman and defendant shook hands. Defendant put the box in the trunk of the Thunderbird, reentered the car, and drove out of the parking lot. The police followed defendant and called ahead for a marked "beat" police car to stop the Thunderbird.

Within minutes a beat car had pulled the Thunderbird over and members of the surveillance team began talking with defendant. The police officers completed a blank consent-to-search form, identifying the Thunderbird as the target of the search, and showed it to defendant. Defendant cooperated with the officers, signed the form, and gave the officers the car keys. The officers opened the trunk and then opened the sealed box, revealing what was later determined to be 4,987.5 grams of 83% pure cocaine with a street value of $2.49 million.

The officers advised defendant of his *Miranda* rights and took him to the police station, where they again advised him of his *Miranda* rights. During their interviews, defendant told the officers that a man named "Jose" sent him to the parking lot to retrieve the box. Defendant was to deliver the box to the area of 47th and Paulina, in Chicago, at which time defendant would receive $3,000.

Defendant was charged with possession of a controlled substance with intent to deliver. Upon a jury finding of guilty, defendant was sentenced to 15 years in prison. Defendant appeals.

ANALYSIS

Defendant raises only one issue on appeal: whether the State proved beyond a reasonable doubt that defendant knew that the box recovered from his car's trunk contained cocaine. Upon review, the question before the court is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, viewing the evidence in the light most favorable to the State." *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). A reviewing court may not disturb the fact finder's determination, here, the jury's determination, unless "the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt as to guilt." *People v. Eiland*, 217 Ill. App. 3d 250, 260 (1991); see also *Ortiz*, 196 Ill. 2d at 259. However, a reviewing court does not retry a defendant. *People v. Hodogbey*, 306 Ill. App. 3d 555, 559 (1999). The jury must evaluate the evidence and witnesses' credibility, resolve any conflicts therein and draw reasonable inferences therefrom. *Ortiz*, 196 Ill. 2d at 259. Although a jury's findings are not conclusive, they are owed great deference. *Ortiz*, 196 Ill. 2d at 259.

1-05-2174

Here, the jury found defendant guilty of possession of a controlled substance, namely cocaine, with intent to deliver. That finding requires the State to prove three elements beyond a reasonable doubt: (1) defendant either actually or constructively possessed the cocaine, (2) defendant had knowledge that the cocaine was present, and (3) defendant intended to deliver the cocaine. 720 ILCS 570/401 (West 2004); *People v. Robinson*, 167 Ill. 2d 397, 407 (1995). Defendant challenges only the State's proof of his knowledge that the sealed box contained cocaine. Accordingly, we shall discuss only the knowledge element.

Knowledge is usually proved by circumstantial evidence because it can rarely be shown by direct proof. *Ortiz*, 196 Ill. 2d at 260; *People v. Smith*, 288 Ill. App. 3d 820, 824 (1997). Knowledge may be proved by presenting sufficient evidence from which a jury may reasonably infer that the defendant knew of the controlled substance's existence at the place officers found it, including acts, conduct or statements (see *Ortiz*, 196 Ill. 2d at 260; *Smith*, 288 Ill. App. 3d at 824; *People v. Bell*, 53 Ill. 2d 122, 126 (1972)), and the surrounding facts and circumstances (*Eiland*, 217 Ill. App. 3d at 260).

Here, defendant argues in his appeal that the State failed to meet its burden such that the jury could not reasonably infer defendant's knowledge of the cocaine's presence in the box that defendant put in his car's trunk. Defendant references several pieces of evidence, and the lack of other evidence, to support his argument. In so doing, defendant relies heavily on *Ortiz* and argues that it is factually similar to the instant case.

In *Ortiz*, the defendant was hired to drive a tractor trailer truck, which was only half filled with oranges, from California to New Jersey. *Ortiz*, 196 Ill. 2d at 241. An Illinois state trooper

4

stopped the defendant because he was speeding. *Ortiz*, 196 Ill. 2d at 240. During the stop, the defendant told the state trooper that he was to be paid between $900 and $1,000 for the trip from California to New Jersey. *Ortiz*, 196 Ill. 2d at 241. Ortiz also told the state trooper that he and "Colon," who drove another truck filled with oranges, were making the trip together. *Ortiz*, 196 Ill. 2d at 244.

During the discussions with the state trooper, the defendant offered the state trooper the opportunity to search the truck. *Ortiz*, 196 Ill. 2d at 242-43. The state trooper produced a consent-to-search form, which the defendant then signed. *Ortiz*, 196 Ill. 2d at 243. The state trooper discovered a metal plate, which was not visible from the back of the trailer. *Ortiz*, 196 Ill. 2d at 243. Contained within a secret compartment behind the plate was 76.9% pure cocaine valued at $30.76 million and weighing 100 kilograms. *Ortiz*, 196 Ill. 2d at 244. However, the defendant testified that he did not watch the trailer's loading, and he was not aware of the secret compartment or its contents. *Ortiz*, 196 Ill. 2d at 247-48. The state trooper testified that it was not unusual for a truck driver to simply check that the load was secure before starting a trip, rather than conduct a thorough search of the load, where a trailer had been previously loaded. *Ortiz*, 196 Ill. 2d at 244.

The trial court, noting that the case was "very close" and that the evidence was wholly circumstantial, found the defendant guilty. *Ortiz*, 196 Ill. 2d at 249. In deciding that the defendant had knowledge of what was going on, the trial court emphasized the fact that both defendant's trailer and Colon's trailer were only partially loaded with oranges and found that it was a suspicious situation " 'to drive an empty truck from the east coast to the west coast and

then bring two trucks back with so few oranges in each one.' " *Ortiz*, 196 Ill. 2d at 250. Our supreme court reversed, concluding that the circumstantial evidence was scant and insufficient to support the defendant's conviction. *Ortiz*, 196 Ill. 2d at 267-68. With respect to the weight of the evidence given to the two partially loaded trucks, the court said that the State failed to provide evidence that the defendant knew that both his truck and Colon's truck were partially loaded. *Ortiz*, 196 Ill. 2d at 263-64. As the court noted, the defendant testified that he was not even present when Colon's truck was loaded, and he believed that he was hauling leftover oranges from Colon's trailer. *Ortiz*, 196 Ill. 2d at 263.

Defendant's reliance on *Ortiz* is misplaced. Viewing all of the facts and circumstances together, this case is not like *Ortiz*, where the circumstantial evidence was scant. For example, although defendant asserts that his cooperation with authorities – signing the consent-to-search form - indicates that he had no knowledge of the cocaine's presence, he, as the State argues, reasonably could have been attempting to make the best of a bad situation. Further, as the State noted in its closing statement, the expectation of a $3,000 payment to transport the box from the grocery store parking lot at 2140 North Western Avenue to the area of 47th and Paulina is indicative of defendant's knowledge of the cocaine's presence. Defendant was not driving a trailer across the country, or even the state; defendant was driving the box just across town.

Moreover, we agree with the State that the jury could have concluded that the cocaine's value, nearly $2.5 million, supported a reasonable inference of defendant's knowledge. The State argues that the cocaine's significant value constitutes a proper basis for an inference that defendant was not an unwitting or unwilling "mule," because a shipment of such considerable

value would not be entrusted to an unwitting or unwilling participant. *Ortiz*, 196 Ill. 2d at 265. Contrary to defendant's argument, this contention is not "belied by *Ortiz*." The evidence in *Ortiz* showed that the defendant there was an unwitting mule. He was merely traveling with Colon, the person who was ultimately sentenced to 60 years' imprisonment. In the instant case, the evidence at trial was different. It was undisputed that defendant here was indeed solely entrusted with the box containing cocaine.

In addition, defendant accepted the box from the middleman and placed it in the car's trunk, after they shook hands. Here, the cocaine was not within a secret compartment behind a panel that was hidden from view, but openly accepted in a grocery store parking lot.

Defendant also likens the facts of the present case to the facts in *People v. Binns*, 27 Ill. App. 3d 978 (1975), and *People v. Hodogbey*, 306 Ill. App. 3d 555 (1999), where the court reversed the defendants' convictions. Defendant argues that *Binns* and *Hodogbey* are similar to the instant case because in those cases the defendants neither opened the box nor attempted to hide the box. However, both cases are distinguishable.

In *Binns*, the police recovered nine sealed envelopes from the defendant's home that contained marijuana. *Binns*, 27 Ill. App. 3d at 979-80. The evidence, however, showed that the defendant had only recently returned home and had also allowed others to use her home. *Binns*, 27 Ill. App. 3d at 980. Importantly, uncontradicted testimony existed that another individual had planted the marijuana-filled envelopes in the defendant's home as an act of revenge. *Binns*, 27 Ill. App. 3d at 981.

In *Hodogbey*, English Customs agents had alerted United States authorities that a package, containing heroin, was mailed from Thailand and addressed to the defendant in Chicago. *Hodogbey*, 306 Ill. App. 3d at 556. Chicago police officers and postal officials arranged and executed a controlled delivery of the package. *Hodogbey*, 306 Ill. App. 3d at 556-57. Notably, however, about five minutes after the defendant accepted the package, he left his home and went about other business. *Hodogbey*, 306 Ill. App. 3d at 557. Moreover, when the police searched defendant's apartment, the package was sitting in the middle of his living room – unopened. *Hodogbey*, 306 Ill. App. 3d at 561.

Moreover, the State notes the presence of facts in the instant case, for example, a $3,000 payment coupled with a short distance delivery, that do not exist in *Binns* and *Hodogbey*. Also, unlike *Binns*, the present case contains no testimony that the contraband was planted as an act of revenge. Unlike *Hodogbey*, defendant here did not receive a package via the mail, but instead met an individual in a grocery store parking lot to obtain the box. Neither *Binns* nor *Hodogbey* involved defendants who were to be paid for delivering the package, thus further differentiating defendant here.

Defendant also asserts that the absence of drug paraphernalia, weapons, or a cellular telephone from defendant's person or the Thunderbird militates against an inference that defendant knew that the box contained cocaine. As defendant correctly notes, such items may typically support an inference of an intent to deliver. *People v. Robinson*, 167 Ill. 2d 397, 408 (1995). However, there is no rule that an absence of those items prevents a fact finder from inferring knowledge. In *Robinson*, our supreme court merely identified various factors and types

of circumstantial evidence that had been used to support an inference of intent. *Robinson*, 167 Ill. 2d at 407-08 (collecting cases). The *Robinson* court did not require the presence of the factors and, likewise, we decline to do so. Here, the jury heard all the evidence, including the fact that the police did not recover a cellular telephone or a weapon from defendant or the Thunderbird. The jury considered all of the evidence before it in reaching its conclusions and determined the due weight of that testimony.

Similarly, defendant contends that "one must conclude" that the middleman was not talking to defendant when the middleman twice talked on his cellular telephone in the grocery store parking lot just before defendant arrived to pick up the box of cocaine. However, one is not compelled to reach that conclusion. A plethora of inferences exist. We need not identify them here, as questions of fact are the purview of the jury.

Finally, defendant raises several other arguments in his appeal, such as the time of day, 6 p.m., indicates a noncovert daytime delivery, and the State's failure to show defendant's presence at Edgar's house. As we noted at the outset, a reviewing court does not retry a defendant. The jury heard and considered all of the evidence.

We believe all of the evidence in the present case, viewed in a light most favorable to the State, supports the jury's finding of defendant's knowledge. We therefore affirm defendant's conviction for possession of a controlled substance with intent to deliver. As part of this judgment, we grant the State's request to assess defendant $100 as costs for this appeal.

Affirmed.

O'BRIEN, P.J., and TULLY, J., concur.