# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Brown, 2012 IL App (2d) 110640**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEFFERY E. BROWN, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-11-0640 |
| Filed | September 12, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for unlawful possession of cocaine was upheld over his contention that he was wearing his brother's pants and did not know drugs were in the pockets, but the imposition of the public defender reimbursement fee was vacated on the ground that the required hearing was not held and the cause was remanded for an appropriate hearing. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 10-CF-2658; the Hon. Daniel B. Shanes, Judge, presiding. |
| Judgment | Affirmed as modified in part and vacated in part; cause remanded. |

Counsel on
Appeal

Thomas A. Lilien and Paul Alexander Rogers, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Lawrence M. Bauer and Barry W. Jacobs, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE HUDSON delivered the judgment of the court, with opinion.

Presiding Justice Jorgensen and Justice Birkett concurred in the judgment and opinion.

## OPINION

¶ 1                                    I. INTRODUCTION

¶ 2      Following a jury trial in the circuit court of Lake County, defendant, Jeffery E. Brown, was convicted of unlawful possession of less than 15 grams of cocaine in violation of section 402(c) of the Illinois Controlled Substances Act (Act) (720 ILCS 570/402(c) (West 2010)). Defendant now appeals, arguing that his conviction of possession of cocaine should be overturned, that the $750 public defender reimbursement fee he was ordered to pay should be vacated, and that he should receive an additional $15 credit against his $500 statutory drug assessment. For the reasons that follow, we affirm defendant's conviction; vacate the $750 public defender reimbursement fee and remand for a hearing to determine whether the imposition of this fee is appropriate; and order an additional $15 to be credited against defendant's $500 statutory drug assessment.

¶ 3                                      BACKGROUND

¶ 4      On August 4, 2010, defendant was arrested by Waukegan police for possession of cocaine. Defendant was released on bond on August 12, 2010, but was taken back into custody on September 2, 2010, after failing a drug test. Defendant was then released on September 9, 2010. The case proceeded to a jury trial on April 4, 2011, where the following testimony was given.

¶ 5      Officer Keith Lamanna testified first for the State. Lamanna, a member of the Waukegan police department, testified that he had been on patrol in his squad car at approximately 5 p.m. on August 4, 2010, when he was dispatched to the intersection of May Street and Genesee Street in Waukegan. Lamanna subsequently related that he was dispatched to this location to investigate an unrelated complaint. In the course of this investigation, Lamanna made contact with defendant. Lamanna testified that he saw defendant walking his dog on

the street. He asked defendant to tie his dog to a fence and to come closer to the squad car so that Lamanna could speak with him. Defendant tied his dog to the fence, but then used a cellular telephone to either make a call or send a text message to someone else. Lamanna described defendant as "very hesitant" to approach the squad car, and Lamanna had to ask defendant two or three times to come closer to the car.

¶ 6 Lamanna testified that he searched defendant. He explained that he was not looking for drugs at the time; rather, the search was conducted in furtherance of his investigation of the unrelated complaint. Lamanna described defendant's pants as "extremely baggy." He found various items in the pockets, including five small plastic bags containing a "white rock-like" substance and a single plastic bag containing a "green plant material." In the course of the search, Lamanna looked through defendant's wallet. He then returned the wallet to defendant. Lamanna stated that he could not remember whether there was identification in the wallet. He said that, if the wallet had contained any identification documents with a name other than defendant's, he probably would have noted that information in his report, as it would indicate "a suspicious kind of situation."

¶ 7 After the State presented the testimony of a forensic chemist regarding the substances Lamanna recovered from defendant, it rested. The defense called its first witness, Gloria Lopez. Lopez testified that she worked for the Lake County public defender's office as a legal secretary, interpreter, and notary. On October 13, 2010, a man identifying himself as Jason Brown came to the office and asked to make a statement. Lopez provided the man with a form and escorted him to a room, where she left him alone to write his statement. The man signed the form in her presence, and, after he provided sufficient proof of his identification, she notarized his statement. The statement consisted of the following:

"I Jason Brown left the house at 12:00 or 1:00 and Jeffery Brown put on my jeans that had my wallet in it and some money with a small rock in it. Ever thing [*sic*] that was in it was not his it was my things [*sic*]. I didn't know that he was putting on my jeans[.] I came home to get what I left in my jeans but Jeffery Brown had already put on my jeans and left."

Lopez stated that she could not remember the man's height or weight or how he was dressed. She did not think she would be able to identify him if she saw him again. She also said that she was unsure if the handwritten content of the statement had been modified after she notarized it.

¶ 8 Defendant testified next on his own behalf. He stated that, on the day of the incident, he was living with his brother Jason in an apartment in Waukegan. His size and build were similar to Jason's, and he often wore Jason's clothes. In fact, the brothers stored their clothes in the same closet. On August 4, 2010, defendant stated, he left his apartment to walk his dog. He put on his brother's jeans, which were "big baggy jeans." He claimed that he did not check the pockets before putting them on and was unaware of any drugs in the pockets. He said that he saw his brother on a daily basis but never saw him possess, use, or sell any drugs.

¶ 9 Defendant related that Lamanna stopped him and asked if he could conduct a search. Defendant consented, and Lamanna found a wallet and some drugs in his pockets. Lamanna looked inside the wallet and found Jason's identification card and two credit cards bearing

Jason's name. Lamanna removed Jason's identification card from the wallet and looked at it.

¶ 10      The jury found defendant guilty of unlawfully possessing less than 15 grams of cocaine. Defendant was sentenced to two years of probation pursuant to section 410 of the Act (720 ILCS 570/410 (West 2010)) and ordered to pay a public defender reimbursement fee of $750 and a $500 statutory drug assessment. Defendant filed a notice of appeal.

¶ 11      III. ANALYSIS

¶ 12      Defendant raises three issues on appeal. He argues that: (1) the State failed to prove beyond a reasonable doubt that he knew he possessed cocaine at the time of his arrest; (2) the $750 public defender reimbursement fee must be vacated because the trial court imposed it without first conducting a required hearing; and (3) he is entitled to an additional credit of $15 against his fine, due to him because of time spent in presentence custody. The State confesses error regarding the last two issues.

¶ 13      A. Reasonable Doubt

¶ 14      Defendant first argues that the State failed to prove beyond a reasonable doubt that he knew he possessed cocaine at the time of his arrest. When reviewing whether the State has presented sufficient evidence to sustain a conviction, we must determine whether a rational trier of fact could have found the elements of the crime beyond a reasonable doubt, viewing the evidence in the light most favorable to the State. *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004). A reviewing court will not retry a defendant. *Cunningham*, 212 Ill. 2d at 279. Instead, the credibility determinations of the trier of fact will be given great deference. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). A guilty verdict may be supported not only by the evidence itself, but also by any reasonable inferences that may be drawn from that evidence. *Cunningham*, 212 Ill. 2d at 279-80.

¶ 15      Defendant was found guilty of possession of less than 15 grams of cocaine in violation of section 402(c) of the Act (720 ILCS 570/402(c) (West 2010)). One element of this offense is that defendant knew that he possessed the cocaine. See 720 ILCS 570/402(c) (West 2010) ("Except as otherwise authorized by this Act, it is unlawful for any person *knowingly* to possess a controlled or counterfeit substance or controlled substance analog." (Emphasis added.)). Whether defendant knew he was in possession of drugs is a question for the trier of fact. *People v. Schmalz*, 194 Ill. 2d 75, 81 (2000). Knowledge is usually proven by circumstantial evidence and can rarely be shown by direct proof. *Ortiz*, 196 Ill. 2d at 260.

¶ 16      Here, defendant argues that the State failed to prove beyond a reasonable doubt that he knew about the cocaine in his pockets at the time of his arrest. While he acknowledges that he was in possession of the drugs, he asserts that he put on his brother's pants unaware that the drugs were in the pockets. He claims that there is no direct evidence that he knew about the cocaine. He contends that his brother's statement to Lopez, in which he averred that the pants belonged to him and not defendant, proves that the cocaine belonged to his brother. Based on the lack of evidence proving knowledge, defendant argues, no rational trier of fact could have found him guilty.

¶ 17    We disagree. Viewing the evidence in the light most favorable to the State–as we must (*Cunningham*, 212 Ill. 2d at 278)–we find that a rational trier of fact could have concluded that defendant knew he was in possession of cocaine at the time of his arrest. First, a rational trier of fact could reject defendant's testimony that he was wearing his brother's pants. Defendant claimed that the fact that his brother's wallet was in the pants was proof that the pants were not his own. However, Lamanna's testimony shed doubt on this claim. Lamanna stated that he would have indicated in his police report whether he found another individual's identification cards in the wallet possessed by defendant. However, Lamanna did not include this in his police report. A trier of fact could conclude from this that the wallet in defendant's pants belonged to defendant and that, in turn, the pants did as well. Moreover, the jury was not required to accept the statement that defendant's brother made to Lopez. It is, of course, primarily the responsibility of the trier of fact to assess the credibility of witnesses and resolve conflicts in the evidence. *People v. Island*, 385 Ill. App. 3d 316, 347 (2008).

¶ 18    Second, a rational trier of fact could conclude that the pants belonged to defendant based on the very fact that he was wearing them. Most people, of course, wear their own pants, and the jury could have rejected defendant's statement that he was wearing his brother's pants. While it is true that the pants were extremely baggy on defendant, defendant testified that he and his brother had similar builds, so they would have been baggy on his brother as well. The jury had an opportunity to witness defendant testify and was free to make conclusions as to his credibility, as was its prerogative to do. See *Island*, 385 Ill. App. 3d at 347.

¶ 19    Third, a rational trier of fact could conclude that defendant's hesitancy to speak to Lamanna tended to prove that he knew about the drugs in his pockets. Specifically, Lamanna testified that defendant was "very hesitant" to approach the squad car and that he had to ask defendant two or three times to come closer to the car. Before complying with Lamanna's requests, defendant tied his dog to the fence and used a cellular telephone to either make a call or send a text message to someone else. An attempt to avoid the police is evidence of consciousness of guilt. See *People v. Ransom*, 319 Ill. App. 3d 915, 920 (2001); *People v. Ward*, 83 Ill. App. 3d 766, 771 (1980). We recognize that defendant's conduct did not rise to the level of flight; nevertheless, it did provide a basis to infer that defendant was reluctant to interact with Lamanna.

¶ 20    In an attempt to counter this inference, defendant cites *People v. Hodogbey*, 306 Ill. App. 3d 555 (1999). In *Hodogbey*, the First District wrote, " '[S]uspicious behavior in the vicinity of narcotics will not suffice as proof of knowledge as to their presence.' " *Id.* at 561 (quoting *People v. Boswell*, 19 Ill. App. 3d 619, 621 (1974)). Defendant argues that, based on this statement in *Hodogbey*, his behavior could not constitute proof that he knew about the drugs in his pockets. However, the law is well settled that a trier of fact is permitted to make all reasonable inferences based on the evidence. *People v. Jimerson*, 127 Ill. 2d 12, 43 (1989). When an individual who possesses drugs acts suspiciously in front of police, is it reasonable for the trier of fact to infer that the suspicious behavior results from the individual's knowledge that he or she is committing a crime? In considering this issue, we will carefully examine the proposition set forth by the *Hodogbey* court and its historical underpinnings.

¶ 21    The *Hodogbey* court's holding that "suspicious behavior in the vicinity of narcotics will not suffice as proof of knowledge as to their presence" (see *Hodogbey*, 306 Ill. App. 3d at

561) is a direct quote from *Boswell*, 19 Ill. App. 3d at 621. *Boswell*, in turn, cites *People v. Ackerman*, 2 Ill. App. 3d 903, 905 (1971), and *Ackerman* quotes *People v. Jackson*, 23 Ill. 2d 360, 364 (1961). Initially, we note that *Ackerman* did not hold that suspicious conduct did not provide proof of knowledge of the presence of narcotics; rather, it found that the defendant's actions did not rise to the level of suspicious conduct:

> "In applying the foregoing authorities to the facts in the case at bar it is our opinion that the evidence fails to show acts, declarations or conduct which fairly support any inference of knowledge by defendant that the package contained LSD. In this respect the State itself refers to defendant's conduct as suspicious or not normal, characterizations which are difficult to justify from the evidence at best and insufficient to support the burden imposed upon the State. All the evidence shows is that defendant received a package in the course of normal mail delivery and placed the package under his arm for about five seconds." *Ackerman*, 2 Ill. App. 3d at 905-06.

Hence, *Ackerman* does not stand for the proposition that "suspicious behavior in the vicinity of narcotics will not suffice as proof of knowledge as to their presence" (see *Hodogbey*, 306 Ill. App. 3d at 561).

¶ 22 Moreover, *Ackerman* relied on *Jackson* for the following proposition:

> "In *People v. Jackson*, 23 Ill. 2d 360 ***, the Court declared, 'The State would have us extend the *Mack* doctrine by holding that suspicious behavior in the vicinity of narcotics is proof *not only of knowledge of their presence, but of all of the other elements of criminal possession as well*. This we cannot do, however reluctant we may be to disturb the determination of the trier of facts in narcotics cases.' " (Emphasis added.) *Ackerman*, 2 Ill. App. 3d at 905 (quoting *Jackson*, 23 Ill. 2d at 364).

Thus, *Jackson* actually stands for the proposition that suspicious behavior may constitute proof of knowledge, but not of the other elements of the offense. Indeed, the *Jackson* court expressly stated that "[t]he evidence [of suspicious behavior] would, of course, be ample to show guilty knowledge in the defendant if the fact of possession had been proved." *Jackson*, 23 Ill. 2d at 364. We further note that *Jackson* relies on *People v. Mack*, 12 Ill. 2d 151, 159-60 (1957), which merely holds that "the prosecution may meet its burden of proving the knowledge essential to a conviction for possession by evidence of acts, declarations or conduct of the accused from which the inference may be fairly drawn that he knew of the existence of the narcotics at the place they were found."

¶ 23 *Hodogbey* and *Boswell*, in essence, stand for the proposition opposite to that announced in the supreme court cases from which they indirectly draw their precedential support. *Jackson* holds that, outside of knowledge, suspicious behavior does not suffice as proof for elements of criminal possession–by implication, then, such behavior may suffice as proof of knowledge. *Jackson*, 23 Ill. 2d at 364. Conversely, *Hodogbey* and *Boswell* state that such behavior cannot suffice as proof of knowledge. *Hodogbey*, 306 Ill. App. 3d at 561; *Boswell*, 19 Ill. App. 3d at 621. As these cases contradict and depart from supreme court precedents, we decline to follow them. Clearly, the trier of fact was entitled to draw the commonsense inference that defendant's suspicious behavior resulted from his knowledge that he was committing a crime in the presence of a police officer.

¶ 24    In sum, viewing the evidence in the light most favorable to the State, a rational trier of fact could have concluded that defendant knew he had possession of the drugs in his pockets. As defendant does not assert that the evidence was insufficient to prove any of the other elements of the offense, his conviction must stand.

¶ 25                          B. Public Defender Reimbursement Fee

¶ 26    We now turn to the second issue defendant raises on appeal. Defendant notes that under section 113-3.1(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113-3.1(a) (West 2010)), when an indigent defendant is provided with court-appointed counsel, the trial court may order the defendant to pay "a reasonable sum" to reimburse the state or county for the cost of his representation. Section 113-3.1(a) requires that the trial court conduct a hearing into a defendant's financial circumstances and find that the defendant has an ability to pay the fee before ordering reimbursement. *People v. Love*, 177 Ill. 2d 550, 563 (1997). Defendant argues that, because the trial court did not properly hold this hearing, we must vacate the $750 public defender reimbursement fee imposed by the trial court. The State agrees that the trial court did not conduct the required hearing.

¶ 27    However, the parties disagree as to the proper remedy. Defendant argues that the fee should simply be vacated; the State asserts that the fee should be vacated and the cause should be remanded to allow the trial court to conduct a proper hearing. Defendant's argument is based on the following portion of section 113-3.1(a): "Such hearing shall be conducted on the court's own motion or on motion of the State's Attorney at any time after the appointment of counsel but no later than 90 days after the entry of a final order disposing of the case at the trial level." 725 ILCS 5/113-3.1(a) (West 2010). The State counters that, in *Love*, 177 Ill. 2d at 565, the supreme court remanded the matter for such a hearing long after the expiration of the statutory 90-day period. The State also asserts that this issue is pending before the supreme court in *People v. Fitzpatrick*, 2011 IL App (2d) 100463, *appeal allowed*, No. 113449 (Jan. 25, 2012). Defendant notes that, in *Fitzpatrick*, the State is arguing before the supreme court that the issue has been procedurally forfeited (defendant has included a portion of the State's brief before the supreme court containing this argument).

¶ 28    Recently, in *People v. Somers*, 2012 IL App (4th) 110180, ¶ 45, the Fourth District under the same circumstances remanded for a new hearing where a public defender reimbursement fee was imposed before the expiration of the statutory 90-day period without a proper hearing. In fact, as in this case, the fee was imposed at the sentencing hearing. *Id.* We find *Somers*' reasoning persuasive. Quite simply, the legislature could not have intended the entire appellate process to be completed in the 90 days following the final order in the trial court. *In re Marriage of Ricard*, 2012 IL App (1st) 111757, ¶ 35 (holding that the legislature is presumed not to intend consequences that are absurd or inconvenient). We also perceive no intent on the part of the legislature to limit this court's ability to order appropriate relief. Accordingly, we vacate the public defender reimbursement fee, and we remand so that the trial court can hold an appropriate hearing.

¶ 29                    C. Credit For Time in Custody Before Sentencing

¶ 30    We now turn to the third issue raised by defendant. A defendant who is incarcerated on a bailable offense and who is later fined as part of the sentence for that offense may have the fine reduced by $5 for every day spent in custody prior to being sentenced. 725 ILCS 5/110-14(a) (West 2010). Defendant contends that the trial court failed to award him this credit for three days he spent in presentence custody. A reviewing court may award the credit even if the defendant failed to apply for it in the trial court. *People v. Woodard*, 175 Ill. 2d 435, 457 (1997). A statutory drug assessment is considered a fine for purposes of awarding the credit. *People v. Jones*, 223 Ill. 2d 569, 588 (2006).

¶ 31    Here, defendant was in presentence custody for 17 days, from August 4, 2010, until August 12, 2010, and then from September 2, 2010, until September 9, 2010. However, he was given credit only for being in custody for 14 days. The State confesses error. Therefore, we hold that defendant is entitled to an additional $15 of credit to be applied against his $500 statutory drug assessment.

¶ 32                                    IV. CONCLUSION

¶ 33    In light of the foregoing, we find that sufficient evidence exists to support defendant's conviction. We also hold that the trial court erred in not holding a hearing prior to imposing a $750 public defender reimbursement fee and that defendant was not given proper credit for time spent in presentence custody. Therefore, we affirm defendant's conviction, vacate the $750 public defender reimbursement fee and remand for an appropriate hearing, and grant defendant an additional $15 credit against his $500 statutory drug assessment.

¶ 34    Affirmed as modified in part and vacated in part; cause remanded.